# CHARLESTON.

AUGUSTUS S. GUTHRIE v. THOMAS C. BEURY *et al.*

Submitted April 23, 1918.   Decided May 7, 1918.

1. ADVERSE POSSESSION—*Wild and Uninclosed Lands—Requisites.*

The mere possession of wild and uninclosed land is not and does not become adverse to the owner of the superior title unless and until the possession is evidenced by such actual, exclusive, visible, and notorious occupation, use and dominion over the land, or by such visible change in its character as amount in law to a complete ouster of the superior claimant.   (p. 448).

2. SAME—*Wild and Uninclosed Lands—Requisites—"Actual Possession."*

Such actual possession depends on the acts of the junior claimant of the land rather than upon the things left undone by the senior claimant, and must effect such change in the condition, as from a wild to an inclosed or cultivated state, and be so continuous and visible as would entitle the superior claimant to proceed against the inferior claimant as a trespasser at any time within the statutory limitation period.   (p. 448).

3. SAME—*Ouster—Deed.*

A deed for land, though executed in due form by one not having authority to do so, is not in itself sufficient to work an ouster in the absence of notice to the true owner of the adverse claim and possession, and to avail such possession must be so notorious, exclusive and hostile as to import notice to such owner or put him upon inquiry as to the right under or by which such dominion is exercised.   (p. 448).

4. LANDLORD AND TENANT—*Adverse Possession by Tenant—Notice.*

The possession of land by a tenant of an ancestor and true owner, continued without visible change after his death, inures to the benefit and protection of his heirs and devisees, and does not become adverse as to them without such notice thereof as in law effects an ouster.   (p. 449).

5. EQUITY—*Decree Pro Confesso—Conclusiveness—Rehearing.*

Where in a suit against the heirs and devisees of a former owner to partition land some of them are served personally with process to answer the bill, and it is taken pro confesso as to them for non-appearance thereto and decrees entered therein denying them any interest in the land are unreversed and the right to appeal therefrom is barred, they are precluded thereby and cannot have such decrees reheard as to them upon the petition of the non-resident heirs and devisees proceeded against only by publication, filed as authorized by § 23, Ch. 106 and § 14, Ch. 124, Code, and who did not have notice or knowledge of the pendency of the suit and of the entry of such decrees, and did not appear in the cause or make defense thereto until after such final decrees were entered, but did appear and file such petition within five years from the date of such entry. (p. 449).

Appeal from Circuit Court, Fayette County.

Suit for partition by Augustus S. Guthrie against Thomas C. Beury and the New River & Pocahontas Consolidated Coal Company and others, with petition and cross-bill by Lewis Gwinn and others. Decree for plaintiff, and Thomas C. Beury and others appeal. *Affirmed and remanded.*

*Holt, Duncan & Holt,* for appellants Thos. C. Beury and others.

*Dillon & Nuckolls,* for appellant New River Consol. Coal Co.

*Henry C. Ryan,* and *C. R. Summerfield,* for appellees.

LYNCH, JUDGE:

The decree reviewed for error upon appeal by the New River & Pocahontas Consolidated Coal Company, whose pecuniary interests are obscure, and the widow and heirs at law of Joseph L. Beury, is predicated upon these important material and uncontradicted facts, though the conclusions of law drawn from them vary accordingly as the rights and interests depending thereon differ. They are: The Commonwealth of Virginia, March 1, 1852, granted to John Gwinn a tract of 444 acres of land on Sewell Mountain, Fayette County, now West Virginia. John Gwinn conveyed the tract to his two brothers, Samuel Gwinn and E. J. Gwinn, October

13, 1859, whereby each grantee became joint owner or joint tenant of the tract and vested with the title to a moiety or equal share or interest in the land granted. Samuel Gwinn died testate in Monroe County sometime between March 3, 1860, the date of his will, and July 9, 1866, the date of its probate and recordation. He named as executors his brother Ephraim J. Gwinn and his son Laban Gwinn, neither of whom qualified or accepted the trust; and Samuel Gwinn, another son of the testator, it appears, though no order or exhibit of an order was shown, did qualify and accept the trust and entered upon the discharge of the executory duties as administrator with the will annexed, and on July 6, 1883, he, as such representative of his father, though denominated executor, and E. J. Gwinn, the other joint owner, and the wife of each of them, united in a deed purporting to be a grant by E. J. Gwinn of his moiety interest in the 444 acres to his two sons, Marion and Harrison Gwinn, and a grant by Samuel Gwinn, administrator of Samuel Gwinn, deceased, of all the interests of the heirs of Samuel Gwinn, deceased, in the same tract to the same grantees. On July 9, 1900, Harrison Gwinn and his wife, Salome, and Marion Gwinn and his wife, Josephine, conveyed the tract to Joseph L. Beury; and on August 29, 1904, Julia Beury, widow of Joseph L. Beury, who died intestate, and his children and heirs at law conveyed to the plaintiff, Augustus S. Guthrie, an undivided half interest in the 444 acres, who and the Beurys conveyed it to E. J. Berwind October 27, 1905. Sometime in the year 1904, the exact date not appearing in the record, Guthrie brought this suit to partition the land and in the bill named as defendants and claimants of interests therein the widow and heirs of Joseph L. Beury, all of whom appeared December 27, 1904, and filed their joint answer to the bill, and the heirs of Samuel Gwinn, one of the two grantees of John Gwinn, upon some of whom process to answer was served in person but who did not appear in response to the process and set up any claim to the land or any part of it or interest in it, and the other of such heirs and devisees were described in the process and bill as the nonresident and unknown heirs and devisees of Samuel Gwinn, deceased; the only notice to

them of the institution and pendency of the suit being the order of publication executed as required by law, but who did not appear in the cause until after the final decree was entered therein adjudging plaintiff Guthrie to be entitled to one part thereof set off to him by metes and bounds and designated as "lot A", for which a deed was executed to him September 25, 1905, by a commissioner appointed and authorized for the purpose, and the Beury widow and heirs to the other part thereof designated as "lot B" as divided and reported by commissioner acting under the authority of an order entered in the cause July 27, 1905.

In the bill filed by the plaintiff Guthrie there is this important and significant allegation: "That prior to the conveyance of an undivided half of said tract of land to your orator as hereinafter stated, the said widow and heirs at law of Joseph L. Beury were certainly the owners in fee of at least an undivided one-half of said tract of land under regular chain of title from the said E. J. Gwinn; but whether they were also the owners of the other half of said tract of land depends, as your orator is advised, upon the right of the said Gwinn, second of that name, as administrator of the said Samuel Gwinn, first of that name, to convey the undivided one-half interest owned by the said Samuel Gwinn, first of that name, in said tract of land to the said Marion Gwinn and Harrison Gwinn by the said deed of July 6, 1883, and the possession held under the said last named deed by the said Joseph L. Beury and his predecessors in title and by the said widow and heirs at law of said Joseph L. Beury."

The nonresident heirs and devisees of Samuel Gwinn, deceased, appeared in the partition suit for the first time on September 24, 1909, and tendered and were permitted to file therein their petition alleging among other things the matters mentioned and required by § 23, Ch. 106 and § 14, Ch. 124 of the Code, namely, the want of personal service on each of them of the process to appear and answer and defend against the allegations of the bill for partition, their non appearance in the cause before the date of the entry of the orders and decrees made therein, the non-service upon them of a copy of such orders or decrees, their want of notice or

knowledge of the institution and pendency of the cause there-
tofore otherwise than by the order of publication, as to which
they were not informed until immediately preceding the
preparation and tender of their petition, and praying for
leave to have the proceedings reopened and reheard and to be
permitted to enter into bond in the amount and upon the con-
ditions prescribed by the statute cited and to make such
defense in the cause as they may be advised to be lawful and
proper and for general relief.

No objection of any kind was interposed by any party to
the cause to the form or substance of the petition and the
allowance of its prayer except the mere formal objection to
the filing of the petition, the action thereon not being assigned
as erroneous upon this review.

The petitioners also tendered and were permitted to file
their joint answer and cross-bill to the bill of the plaintiff,
in which they named as defendants the plaintiff in the parti-
tion suit and the widow and heirs of Joseph L. Beury, de-
ceased, and against them prayed the usual process to answer
the matters and things alleged in the petition and the answer
and cross-bill, in which answer and cross-bill the respondents
specifically set forth in detail, as also did the plaintiff in his
bill, the right and claim of each of them to an interest or
share in the 444-acre tract of land as the heirs at law, de-
visees and legatees of Samuel Gwinn, deceased, denied the
validity of the deed by Samuel Gwinn, the administrator of
his father, Samuel Gwinn the elder, to Marion and Harrison.
Gwinn and the authority and power of the administrator
under the will of the testator, Samuel L. Gwinn, to convey
his moiety in the tract, and the allegations of the bill of the
plaintiff Guthrie that the deed aforesaid, if invalid for the
want of such authority or power, constituted color of title to
a moiety of the tract and that the possession of the land
thereunder, if any, was of such character and continuity as
to confer a perfect and indefeasible title to such interest, and
prayed for process against such defendants, which was award-
ed, and for a decree assigning and allotting to each of the re-
spondents his or her relative share or proportional part of the
moiety interest in the 444-acre tract acquired by Samuel

Gwinn, Senior, under the deed by John Gwinn to him and E. J. Gwinn dated October 13, 1859, and for such general relief as equity and law may require or will permit.

Upon the rehearing of the cause upon the petition, answer and cross-bill of the nonresident devisees and heirs at law of Samuel Gwinn, deceased, and the proof taken and filed in support thereof and the demurrer and answer of the widow and heirs at law of Joseph L. Beury, adopted by the plaintiff Guthrie as and for his demurrer and answer, the circuit court upon November 2, 1916, entered the final decree and set aside and annulled the decrees entered in the cause on July 27 and September 18, 1905, in so far as they affected or tended to affect the rights of the nonresident heirs and devisees of Samuel Gwinn, deceased, and adjudged them to be entitled to certain undivided interests in the land, determined and fixed the relative shares and proportions of each of them, and appointed commissioners to re-partition the tract and to assign and allot to such heirs and devisees the aliquot parts or respective shares decreed to them.

While the pleadings put in issue the right and power of Samuel Gwinn under the will of his father to grant the title to the moiety interest of the testator in the tract of land involved, counsel representing the appellants apparently have abandoned reliance upon such authority, and a careful inspection of that instrument leads us to no provision contained in it which by any interpretation induces the belief that such power is contained in it; nor, so far as can be discovered from a like inspection, that the testator made any effort directly or inferentially to dispose of his interest in the 444 acres either by devise or by sale, but that as to it he died intestate; and we are constrained so to hold, notwithstanding the presumption against partial intestacy, on the theory that a testator in the absence of evidence to the contrary presumably intends to dispose by will of his whole estate.

Conceding but not determining the sufficiency of the successive deeds beginning with the deed of E. J. Gwinn and Samuel Gwinn, administrator, to Harrison and Marion Gwinn, dated July 6, 1883, and the deeds succeeding it in the order heretofore stated to operate as color of title, as the

appellants contend they do, the only other question demanding discussion and adjudication is whether the consecutive grantees had any, or if any, such possession of the tract of land or any part of it as would in law effect an ouster of the heirs of Samuel Gwinn, deceased, and bar them from setting up a claim to the moiety interest of their ancestor. "There can be no adverse possession of wild lands as against a superior title unless such possession is actual, exclusive, visible and notorious. A mere claim of possession accompanied by the occasional cutting of timber, the prevention of trespasses, the payment of taxes, and the assertion of title is not sufficient, but it must be such occupation, use, or holding of the property, or change in its character as * * * amounts to an ouster of the superior claimant." *Wilson* v. *Braden,* 56 W. Va. 372. In the opinion in the case cited the court said: "Actual possession depends on the acts of the junior claimant and not on things left undone by the senior claimant. Such acts must be such as change the condition of the land from a wild to an inclosed or cultivated state, and so continuous in their nature as would enable the superior claimant to proceed against the inferior claimant as an actual trespasser at any time during the statutory period. *Core* v. *Faupel,* 24 W. Va. 246." A deed, though executed in due form by one not having authority to convey and delivered to the grantee and recorded, is not of itself sufficient to work an ouster in the absence of an actual notice to the real owner of an adverse claim and possession thereunder, and if there be such a possession, it must be so notorious, exclusive and hostile as to give notice to such owner or put him upon inquiry as to the right under or by which such dominion is exercised. *Pickens* v. *Stout,* 67 W. Va. 422; *Parker* v. *Brast,* 45 W. Va. 399. These principles are so well settled that further citation of authority is unnecessary. They have been repeated with such frequency in our own decisions as to become axiomatic.

Let us inquire then as to the nature and character of the land and of the possession upon which appellants apparently rely. The lands remain in a state of nature, wild, uncultivated, unimproved, uninclosed, except as to a short and narrow strip or parcel which by inadvertence was cleared and

fenced by Samuel Lively under the mistaken supposition that it was a part of an adjoining tract owned by him. E. J. Gwinn, the joint tenant of Samuel Gwinn, Senior, under the conveyance from John Gwinn of October 13, 1859, caused it to be surveyed and ascertained that Lively had inadvertently cleared and inclosed the strip within his boundary, and they entered into an agreement whereby Lively was to recognize the superior right and claim of the two Gwinns to the strip with the promise on his part to remove his fence to the true line between the tracts whenever the Gwinns should demand its removal, and whereby they granted to him permission and he accepted the privilege of pasturing his stock on the 444 acre tract upon the condition that he protect the land while such arrangement continued from the commission of waste or trespass by the cutting of timber or otherwise by persons not having title thereto. Lively therefore entered upon the land under a form of tenancy or agency under both Samuel Gwinn, Senior, and E. J. Gwinn, and continued to hold for and represent them during the time they remained such owners of the tract. His relation to them and to the tract continued without interruption while Samuel Gwinn lived.

Marion Gwinn and Harrison Gwinn were cognizant of the possession and occupancy of Samuel Gwinn and E. J. Gwinn through Lively at the time of the execution, delivery and acceptance of the deed of grant to them of July 6, 1883; and if it be conceded, as the fact is proved to be, that Harrison and Marion Gwinn undertook to maintain the same personal status in respect of the land, they did so with notice and knowledge of the prior agreement, and if, when they secured their deed, Lively was in possession holding under the true owners, and thereafter continued to remain on the land under the agreement with Samuel and E. J. Gwinn, and the heirs of Samuel Gwinn as the true owner of a moiety had no notice of the subsequent agreement, then under the principles laid down in *Pickens* v. *Stout, supra,* the possession of the vendees by such tenant is not adverse to Samuel Gwinn's heirs, but becomes adverse only from the date of the removal of the tenant from the land and from the time the vendee takes possession thereof himself or substitutes new tenants thereon,

and thereafter by himself or his tenants exercises such hostile, adverse and exclusive acts of ownership over the land as a reasonably prudent and cautious owner ought to be aware of and would be bound to take notice of and inquire by what authority his rights are ignored and disregarded.

But had these heirs seen Lively on the land clearing it of its timber and committing other waste, acts or conduct not charged against him, and had inquired by what authority he did so, they would have ascertained nothing more than that he was there as their representative, and though he had betrayed the trust reposed in him, his acts were not such as finally and necessarily would ripen into a possession hostile and adverse to them. Just how long he remained on the land or when his tenancy ceased he and no witness says, but he did as a witness on June 5, 1905, say that he then had lived on the adjoining tract for thirty years, and had known the tract in controversy during that entire period, and had "never heard or known of any person or persons other than E. J. and Samuel Gwinn and Marion and Harrison Gwinn setting up any claim to the tract of 444 acres." Our conclusion is that the claim of the Gwinn heirs is not barred by the statute of limitations and that the decree is right upon this point.

Clearly Andrew Gwinn, Fletcher Gwinn and Mason Gwinn, defendants to the bill by Guthrie, are concluded by the decrees entered in the partition suit before the nonresident Gwinn heirs filed their petition and cross-bill answer in that cause. These decrees as to them are final and unreversed and not now appealable. Samuel Gwinn who joined in the deed of October 13, 1883, is concluded by that instrument, though he purports to have executed as administrator of his father. To these the decree appealed from denied the right to participate in the final partition of the land, and rightly so for the reasons assigned.

In the brief of counsel for the appellees and cross-bill respondents, the denial of the claim of Harvey Gwinn to participation in the partition of the land is assigned as erroneous on the ground that, though named as a party in the petition for a rehearing and in the process and order of publication, his name was inadvertently omitted in the answer and

cross-bill filed by Lewis Gwinn and others, in each of which papers his right to such rehearing and relief was stated and his interest defined with the same particularity as were the rights and interests of his co-heirs in these pleadings. But it does not appear whether he filed his answer to the cross-bill before or after the decree appealed from was entered. Certain it is the decree does not refer to his answer nor does any decree or order file it or make it a part of the record, though printed in the record. So far as we can see, it is merely a fugitive or stray paper without indorsement or other recognition of its identity.

Whether the clause in the will saying: "To be plain and to avoid mistakes, I must state that if Andrew Gwinn & Laban Gwinn receive the lands left them in the manner provided, then they do not come in at the final division of my estate", precludes their right to share in the partition of the 444 acres it is not necessary to determine for this reason. Laban Gwinn died, whether testate or intestate no pleading or proof shows, sometime prior to the institution of the Guthrie partition suit, leaving surviving him a widow, Amanda E. Gwinn, and two sons, Fletcher Gwinn and Mason Gwinn, all three of whom and Andrew Gwinn were named in the bill in that suit as defendants and personally served with process but did not answer or appear in the cause, and, as they did not appeal from the first decrees entered therein, they cannot now be heard to complain of the final decree entered in the cause in favor of the other heirs and devisees of Samuel Gwinn the elder.

For the various reasons assigned we affirm the decree last mentioned, and remand the cause for further proceedings.

*Reversed and remanded.*