# CHARLESTON.

JOHN HUTCHENS *et al.* v. IANTHA DENTON *et al.*

Submitted March 4, 1919.   Decided March 11, 1919.

1. PARTITION—*By Parol—Severance of Common Title.*

A parol partition of land does not effect a severance of the common title, unless it is followed by actual possession of the parcels in severalty in such manner and to such an extent as to effect ousters of the parties by one another, and for such time as is sufficient to vest title by adverse possession. (p. 582).

2. TAXATION—*Land Owned by Tenants in Common—Assessment.*

A tract of land owned by cotenants cannot lawfully be·assessed to them separately by undivided interests, or separately by aliquot parts representing such interests, and a tax sale and deed depending on such an assessment are void. (p. 582).

3. SAME—*Tax Deed—Undivided Interest in Lands.*

A tax deed purporting on its face to convey an undivided interest in land, other than a town lot, is unauthorized by law, and not conclusive as 'to any one. (p. 582).

4. TENANCY IN COMMON—*Conveyance—Disseizin.*

The deed of one cotenant for the entire property, held under a common title, to a stranger, who takes and holds possession thereunder for the statutory limitation period claiming title to·the whole property, may work a disseizin of the ousted tenant. (p. 588).

5. REMAINDERS—*Conveyance by Cotenants—Right of Entry—Limitations.*

Though such a deed by one cotenant conveying the entire tract may for some purposes work an ouster of the other, a life tenant of an undivided moiety, yet it does not so conclude the right of entry by the remainderman, or set in motion against him the statute of limitations, until his right of entry accrues by the termination of the preceding estate. (p. 588).

6. TENANCY IN COMMON—*Statute—Limitations—Partition.*

Such ouster does not necessarily mean physical eviction, but simply marks the time when the statute of limitations begins to run, and does not within the statutory period destroy the cotenancy, or affect the right of the ousted cotenant to recover possession of the land, or maintain a suit for its partition. (p. 588).

Appeal·from Circuit Court, Randolph County.

Suit by John Hutchens and others against Iantha Denton and others. From a decree dismissing the cause, plaintiffs appeal.

*Reversed and remanded.*

*Strader & Tallman* and *Arnold & Arnold,* for appellants.
*A. J. Valentine* and *W. B. Maxwell,* for appellees.

LYNCH, JUDGE:

The adjudication of the issues raised upon this appeal awarded plaintiff below from the decree dismissing the cause as developed by the pleadings and proof involves to some extent the interpretation of the will of Benjamin Denton, made and probated in Rockingham County, Virginia, in 1855, and recorded in Randolph County, then in Virginia, now in this state, in 1876, the land devised being in the last named county. The plaintiffs are the children and heirs at law of Thomas and his wife Margaret E. Hutchens, the daughter of the testator, and the defendants are Iantha Denton, the widow of Benjamin Denton, and Julia Denton, Louvena Holsberry, Tabitha A. Gibson, Cornelia E. Van Eaton, Mattie Moore, Vera Denton, and Eleanor Denton, the children and heirs at law of Lorenzo Denton, a son of the testator. The object of the suit is to partition between the plaintiffs and the defendants, except Iantha Denton, the 200 acres of land devised by Benjamin Denton to Margart E. Hutchens and Lorenzo Denton. Benjamin Denton died in Rockingham County, Virginia, in 1855, Thomas Hutchens in 1903, and Margaret E. Hutchens in 1909, both in Nebraska, and Lorenzo Denton in Randolph County in 1911.

The eleventh paragraph of the will, the only paragraph necessary to examine, is embodied in the following language, except as to the words in parentheses substituted or changed to render intelligible its meaning: "(To) my daughter Margaret E. Hutchens and my son Lorenzo Denton I will a certain tract of land lying in the county of Randolph, Virginia, on the west side of Leading (Creek). I will one-half of this tract of land to my daughter Margaret E. Hutchens and her children forever. Then after the death of her and

her husband Thomas Hutchens (the land) to be sold and the money to be equally divided amongst her children; but should she (die) without heirs (children surviving), after the death of her husband, to go back to her lawful heirs; and to my son Lorenzo Denton the other half to him and his heirs forever.''

Severed from other parts of the paragraph and considered alone, the clause, ''I will one-half of this tract of land to my daughter Margaret E. Hutchens and her children forever,'' would, if she had no children living at the death of the testator when the will became effective, seem to confer upon her an unqualified fee in an undivided moiety of the land. The latter died the same year the plaintiff John Hutchens was born, but whether the death of the one or birth of the other first occurred does not appear. If the birth of John Hutchens occurred while the testator was living, he and his mother took a joint estate in equal portions, and not she alone a fee. Because, unless a different intent plainly appear, ''children'' in a devise is a word of purchase, not of limitation, as held in *Wills* v. *Foltz*, 61 W. Va. 262, 12 L. R. A. (N. S.) 283, and comprehensive note. See also 1917B, L. R. A. 49, note. But in view of the conclusion reached in this case it is not important whether the son was born before or after the death of the testator. In either event he has such estate as entitles him to have partition, unless the right thereto is barred by limitation.

It is not necessary, however, to prolong the discussion upon this phase of the will, because of the thorough discussion of the subject in *Wills* v. *Foltz, supra,* and because other provisions of the will are determinative of the intention of the testator in the devise to his daughter and son, when it is read and considered in its entirety. For when so read and considered, its meaning seems quite obvious. It manifests itself in the provision for the sale of the moiety or undivided half devised to Mrs. Hutchens and the equality of the division of the proceeds among any children born to her, provided she survived her husband and had children living at the date of her death. She did survive her husband and the plaintiffs are her children. Compliance with the conditions

does not in any manner affect the estate devised to her, for the will expresses a purpose not to confer a fee simple absolute in the moiety other than Lorenzo's, the largest and most extensive interest that can be enjoyed in land, an interest marked by the unrestricted power of alienation by the possessor. Such an interest was not created by the will. This power to alienate the land in fee the testator did not grant unto her. She took, subject to the restraint so imposed, not an unlimited or unrestricted freehold estate, but a life estate. Of course she could, with the consent of her husband given as required by law, voluntarily dispose of it by sale, but she could not with or without such consent dispose of the fee in the land, because to do so would not be consistent with the inhibition plainly implied in the instrument creating an estate in the land as to her. The *jus disponendi* is wanting in that respect. A purchaser from her would take only the title conferred by the will. No language except that contained in the second clause purports to empower her to make a complete fee title to the land. It was hers to grant an interest in it only so far as the law, not the will, gave her that power, the power to sell and convey, not the land itself in the sense that the purchaser would acquire the fee simple absolute, the unlimited and permanent dominion over it, but a control limited by the estate she held, that is, subject to sale under the terms of the will. Any other estate in the land, if granted by her, would be inconsistent with the intent declared by the testator. This intent clearly was to limit her interest to a freehold for her life, that is, merely a life estate, with remainder over to her children, or if there were no children surviving her, then to her heirs. She had only a temporary dominion over the land, a dominion which terminated with her death. This seems to be the only just and reasonable interpretation of the will.

Then we come to the claims set up by the heirs of Lorenzo Denton to an ownership of the whole tract, which they base upon two propositions: (1) An oral partition of the land between him and Mrs. Hutchens; (2) the acquisition of her undivided half interest at a delinquent tax sale on October

27, 1879, and a deed therefor by the clerk of the county court of Randolph County September 25, 1884, and possession under both the partition and tax deed. The proof to support the alleged partition, as the circuit court found, falls far short of establishing an agreement to that effect. There was some discussion between the coparceners respecting a division of the land into two equal parcels, according to some of the witnesses, who at the time of the negotiations detailed must have been quite young and possessed of retentive memories, a thing not impossible, it is true, but extraordinary, if they could after the lapse of more than 60 years, as they seemed to do, recall what was said in 1855 as regards the severance of the common title. It is not improbable that they may have heard some desultory and inconclusive discussion of the subject, but the circumstances disprove the execution of an agreement to partition. "A parol partition of land does not effect a severance of the common title, unless it is followed by possession of the several parcels, in such manner and to such an extent as to effect ousters of the parties by one another, and for such time as is sufficient to vest title by adverse possession." *Williamson* v. *Wayland Oil & Gas Co.*, 79 W. Va. 754; *Martin* v. *Clark*, 76 W. Va. 115; *Justice* v. *Lawson*, 46 W. Va. 163. If there was an agreement to partition, there was nothing done under it to give it effect, nothing that would excite the suspicion of a purpose to exclude the right of Mrs. Hutchens to resume possession of the land at any time she might elect to do so. Nothing further need be said regarding the alleged partition except in so far as the discussion of the statutory bar may also be relevant to possession under the partition, the tax deed, and Denton's deeds to his children.

Furthermore, the claim of title set up by the heirs of Lorenzo Denton to his sister's moiety of the land, predicated solely upon the tax deed, has no inherent merit, barring for the present the discussion of the applicability of the statute of limitations pleaded and relied on by appellees. The tax sale and deed had for a foundation nothing other than a faulty or unauthorized assessment. The law in this state does not recognize an assessment of an undivided interest in

land, though otherwise as to a town lot. If any undivided interest should be omitted from the land books for a period of five successive years, the title to the entire tract would become forfeited and vest in the state. *Toothman* v. *Courtney,* 62 W. Va. 167, 183-4 . The same result naturally follows the tax delinquency of a like interest, and, though not working a forfeiture, it does render the entire tract liable to sale by the sheriff, unless previously paid or the land redeemed before the tax deed is made to the purchaser. ''A tax deed purporting on its face to convey an undivided interest in land, other than a town lot, is unauthorized by law, inoperative, and not conclusive, as to any one.'' *Caretta Railway Co.* v. *Fisher,* 74 W. Va. 115; *Toothman* v. *Courtney, supra.* Nor will a payment by one owner of a portion of the taxes assessed against the whole of a tract of land in which he is interested, corresponding with his interest therein, prevent the delinquency of the entire tract, as we recently held in *State* v. *Central Pocahontas Coal Co.,* 83 W. Va. 230, 98 S. E. 214.

To evade or avoid the consequences likely to result from the application of these principles, and to give the semblance of regularity to what ensued, Lorenzo Denton in 1869, without the knowledge and concurrence of his sister or her husband, procured the separate entries of half the acreage of the tract on the land books in his name, and the other half in the name of his sister's husband; and thereafter the taxes were assessed thereon accordingly, though from 1855 to 1869 the land was charged and taxes assessed in the name of and against both Lorenzo Denton and Thomas Hutchens, the former of whom paid the taxes and demanded return of half the amount so paid. This he did, the bill charges, pursuant to an arrangement entered into by Lorenzo Denton and Thomas Hutchens before the departure of the Hutchens for Illinois in 1855. This allegation the appellees deny. But, notwithstanding the denial, it is significant that, until the tax sale relied on by the appellees to defeat partition, Lorenzo Denton did what the bill charges he agreed to do during the absence of his sister. Performance by him to this extent clearly appears from the testimony of his son Douglas

A. Denton. The testimony of this witness goes far towards establishing the alleged agreement, though also the breach thereof by the Hutchens. For he says: "He (Lorenzo Denton) simply looked after it (the land) and paid it (the taxes) with the understanding that they (the Hutchens) were to pay him, not because he felt he needed to; and Mr. Hutchens never would pay the taxes (clearly meaning the reimbursement of his father), and that's the reason that he (Lorenzo) let it (the land) go eventually." A further corroborative fact testified to by the same witness on cross-examination is the repayment by the Hutchens of part at least of the taxes paid by Lorenzo. To that extent his testimony is inconsistent, not to say contradictory. Apparently there was some agreement regarding taxes chargeable to the entire tract, the disregard of which by the Hutchens did not warrant the course adopted by Lorenzo Denton without the least pretense of legal formality or regularity. There was available for him recourse to approved legal methods by which to enforce repayment of moneys expended for the benefit of his sister. There may indeed be some question whether there was default by the Hutchens in reimbursing appellees' ancestor. Certainly the extent of the failure on their part is not established. But if it were, that fact alone did not warrant the tax sale or render legal the procedure through which it is claimed Lorenzo Denton acquired the title to the whole tract.

The alteration in the mode of assessment so long acquiesced in by the parties, and the assignment as cause therefor the oral partition effected in 1855, if at all, is out of harmony with the tax deed. Though its recitals are of a delinquency occasioned by the failure to pay taxes on 100 acres in the name of Thomas Hutchens, the deed describes the land sold, purchased and conveyed as being the undivided one-half of a tract of 200 acres, the half willed to Margaret Hutchens by Benjamin Denton. And as if to avoid misapprehension, the deed sets out at length the calls of the 200-acre tract as they appear in the conveyance to the testator.

In furtherance of the attempt to sustain the decree, appellees in their answer filed in the cause pleaded and relied on

the possession of Lorenzo Denton taken and held under the tax deed, and their possession under his deed to them in 1901. The combined possession of the father and children under these deeds, if the possession so combined had the requisites necessary to constitute an adverse holding, exceeds the statutory ten year limitation period required to effect an ouster. Upon this phase of the case the proof introduced to show title by operation of the statute is directed exclusively to possession under the alleged partition without regard to the tax deed. This dissociation of the sources of the entry on the land may not be material. Granting that it is not, what of the acts done indicative of an intent to assert a claim hostile to the life tenant, and of which she lawfully was bound to take notice? These acts consisted of the removal and sale of timber, the clearing and fencing of a boundary containing not to exceed three acres in a tract of 200 acres not partitioned between the parties interested. Until the severance of the land into two equal parcels, or the acquisition of Mrs. Hutchens' half by some method recognized by law as valid and sufficient to bind the remaindermen, each of the coowners could lawfully cut and remove such timber as their necessities demanded for use on the land itself, subject, however, to be called to account for an abuse of the privilege. Such are the rights of joint owners of an undivided tract of land, a right as old as the doctrine of tenancies itself. Each tenant is seised *per my et per tout,* according to the old Norman-French expression. Nothing done in the cutting and removal of the timber, the quantity cut and removed not being disclosed by the testimony, except by the vague statement, "a good bit," warranted the assumption of a design to create an estate under the statute of limitations; nothing to bar the right of the life tenant or the remaindermen after her death to resume possession of the undivided interest, when set off to them as proposed in the suit. For it must be remembered that it is not what Mrs. Hutchens failed to do to protect her rights and the rights of her children, but what Lorenzo Denton did or caused or permitted to be done that counts under the statute. *Guthrie* v. *Beury,* 82 W. Va. 443, 96 S. E. 514.

Thus far, however, we have spoken only of the abortive partition and tax deed. But what we have said applies with equal force to the alleged possession of the children of Lorenzo Denton under his deeds to them. Their execution, the appellees contend, set in motion the statute of limitations, and their possession thereunder, continued for ten years, operated to oust her and her children and vest complete title in them before the institution of this suit in 1914. In this connection the character of the land has an important bearing. It is wild and uninclosed except here and there in small parcels not identified, and it is undivided and uninclosed except as to the parcels cleared and cultivated. With these exceptions and some residences erected by appellees, it is in its natural state or condition, we must assume, because there is no evidence to show the contrary. Had the fact been otherwise, certainly the proof to establish it would have been produced. So vital a matter would not have been overlooked.

It is undoubtedly true that if one coparcener or cotenant conveys the entire tract to a stranger, who takes actual possession claiming the whole, it is an ouster of the other coparcener or cotenant. The stranger's possession is adverse to them, and the statute of limitations runs in his favor. *Bennett* v. *Pierce,* 50 W. Va. 604; *Lloyd* v. *Mills,* 68 W. Va. 241; *Hardman* v. *Brown,* 77 W. Va. 478. But in this case the deed relied on as constituting the ouster and beginning the adverse possession was not made to a stranger but to privies in estate, who later at the death of their father would have become tenants in common with their aunt, and after her death with her children, the plaintiffs. Had Lorenzo Denton not made a deed to his children, they at his death would have become subject to the duties owed by him to his sister and her children respecting the land. A stranger in title would not be bound. A deed to him and possession thereunder would operate as adverse and sufficient to put the statute into operation. But a deed by a cotenant to his heirs who are under such prospective duties is of a different character, and is not presumed to be adverse, for the relations between tenants in common are presumed to be amicable rather than

hostile, and the acts of one affecting the common property done for the common benefit.

However, it is unnecessary to decide whether the deeds of 1901 and possession under them in fact effected an ouster of Mrs. Hutchens. As we have construed the will under which the parties claim, she took a life estate in one-half only, with remainder over to her children to be sold and the proceeds to be divided among them. Under no circumstances could the statute of limitations run against them, for they had no right of entry until the termination of the life tenancy. ''As to rights in land there can be no ouster or the running of the statute of limitations against one until he has right of entry.'' *Lynch* v. *Brookover,* 72 W. Va. 211; *Titchenell* v. *Titchenell,* 74 W. Va. 237. Hence as to appellants the statute did not begin to run until her death in 1909, even on the assumption that the deeds of 1901 and the possession of the appellees thereunded did disseize the life tenant. From that date, and not before, the ouster became operative against appellants. Such ouster does not necessarily mean physical eviction, but simply marks the time from which the statute begins to run; nor within the period thereby prescribed does it destroy the cotenancy, or affect the remedies of the disseized cotenant to recover possession of the land, or its proceeds, by a suit for partition. *Cecil* v. *Clark,* 44 W. Va. 659; *Hardman* v. *Brown,* 77 W. Va. 478.

For the reasons stated, our order will reverse the decree, and remand the cause for further proceedings according to the principles herein enunciated.

*Reversed and remanded.*