# CHARLESTON.

JOHN W. JARRETT *et als.* v. SARAH C. OSBORNE *et als.*

Submitted September 23, 1919.   Decided September 30, 1919.

1. EQUITY—*Parties Materially Interested in Subject-Matter of Suit Necessary Parties.*

   It is a general rule that all persons materially interested, either legally or·beneficially, in the subject-matter involved in a suit, who are to be affected thereby should be made parties thereto either as plaintiffs or defendants.  (p. 564).

2. TAXATION—*In Suit to Cancel Tax Deeds Grantees of Tax Deed Holders Necessary Parts.*

   Where a suit is brought to set aside and cancel certain tax deeds as void, and to have partition of the real estate conveyed thereby, claimed to be owned jointly by the plaintiffs and the defendants, and it appears from the allegations of the bill that after the making of said tax deeds the defendants claiming under them conveyed parts of the real estate to others, such others are necessary parties to·the bill, unless the plaintiffs in their bill adopt such sales and ask for partition only of the residue of the land, and an accounting of the monies received for the part so sold.  (p. 564).

3. SAME—*Separate Assessments Against Cotenants Invalid.*

   A tract of land owned by cotenants cannot lawfully be assessed to them separately by undivided interests, or separately by aliquot parts representing their undivided interests, and a tax sale and deed dependent upon such assessment are void.  (p. 565).

4. SAME—*Payment by Tenants in Common on Assessment on Undivided Interests Prevents Forfeiture.*

   The assessment of lands owned jointly to the several owners thereof by undivided interests, or by aliquot parts, representing the interests of said owners in the whole tract, and the payment of the taxes under such assessments will prevent the forfeiture of the same to the state for non entry and non payment of taxes, notwithstanding such assessments are invalid.  (p. 565).

5. SAME—*Where Undivided Interest of Cotenants Untaxed for Five Years Entire Tract Forfeited to State.*

   If land owned in common is assessed separately to·the several owners by undivided interests, or by aliquot parts representing such undivided interests, and any such undivided interest or aliquot part representing the same is omitted·from the land books for a period of five successive years, the title to the entire tract will be forfeited to the state, notwithstanding the entry and payment of taxes as to the other undivided interests.  (p. 565).

6. TENANCY IN COMMON  *Purchase of Tax Title by One Cotenant Inures to Benefit of All.*

   Where the joint owners of a tract of land permit the same to be returned delinquent and sold for non payment of the taxes thereon, and it is purchased by one of such joint owners at such

sale, such purchase will be held to be a redemption of such lands from the delinquency, and the subsequent payment of taxes thereon by such joint owners will be for the benefit of all those interested therein. (p. 565).

7. ADVERSE POSSESSION—*Void Tax Deed Good Color of Title.*

A void tax deed is good color of title both for the purpose of § 3 of Art. 13 of the Constitution, and the Statute of Limitations. (p. 568).

8. TENANCY IN COMMON—*Laps of Time Cannot Bar Right of Cotenant Without Ouster.*

As the possession of one cotenant is the possession of all, laches, acquiescence, or lapse of time cannot bar the right of entry of a cotenant until actual disseisin has been effected by some notorious act of ouster brought home to his knowledge. (p. 568).

9. SAME—*Conveyance of All Property by One Cotenant Not Ouster Barring Other Cotenants.*

The making of a deed for the whole property by a cotenant to a stranger is not such an act of ouster as will bar the other interested parties from asserting their rights in the land, unless it is shown that actual adverse possession is taken thereunder by the grantee in such deed. (p. 568).

10. SAME—*One Cotenant Cannot Bar Cotenant Without Knowledge of Hostile Claim.*

To enable one joint tenant or tenant in common in the exclusive possession of land to effect an ouster against his cotenant so as to defeat the right of such cotenant by adverse possession, such cotenant must have had notice or knowledge of such hostile claim. Mere silent possession, however long, by one taking rents and profits, without notice or knowledge of such adverse claim on the part of the other will not render such possession adverse. (p. 568).

11. SAME—*Certain Acts of Cotenant Notice of Adverse Claim.*

Where a cotenant in possession of the joint property openly treats the same as his own, by making sales of parts thereof, by selling and causing to be removed the timber therefrom, and extracting and selling the minerals therefrom, with the knowledge and acquisence of his cotenant, such acts will be notice to such cotenant of a claim adverse to his interest, and if he fails to assert his interest in the land within the time provided by law he will lose his title thereto. (p. 568).

Certified from Circuit Court, Kanawha County.

Suit by John W. Jarrett and others against Sarah C. Osborne and others. Demurrer to bill sustaned, with leave to plaintiffs to amend, and case certified. Certified questions answered, affirming the rulings.

*J. Howard Hundley* and *C. E. Kimbrough,* for plantiffs.

*Koontz & Hurlbutt* and *J. G. Bunting,* for defendants.

RITZ, JUDGE:

Prior to the year 1861 James Atkinson became the owner of a tract of land of 468 acres, another tract of one hundred acres, and an undivided one-half interest in a tract of 293 acres, all situate in the county of Kanawha. The bill in this case alleges that, while the record shows that said Atkinson owned an undivided interest in the 293 acre tract, he and his co-owner had by parol partition assigned to themselves respectively separate parcels of this land, and had made such parol partition effective, so that upon the allegations of the bill said Atkinson was the owner, not of an undivided interest in this tract but of a tract, part thereof, consisting of 146½ acres, assigned to him by such parol partition. His interest in said three tracts being so defined at that time, he, in the year 1861, conveyed to his daughter Caroline Samples a one-half undivided interest in the 468 acre tract, a one-half undivided interest in the one hundred acre tract, and a tract of 73¼ acres carved out of the 146½ acres belonging to him, part of the 293 acre tract. In the year 1866 he made a deed to his daughter Mary Jarrett conveying to her a one-fourth undivided interest in the 468 acre tract, a one-fourth undivided interest in the one hundred acre tract, and a tract of about forty acres carved out of what remained to him in the 293 acre tract, the intention being to convey to her about half of the remainder thereof. This left in Atkinson at the time of his death in 1867 a one-fourth undivided interest in the 468 acre tract, and a like interest in the one hundred acre tract, and a tract of about 34 acres, part of the 293 acre tract.

The bill shows that from 1867 to 1890 inclusive there was charged upon the land books in the name of Atkinson's heirs a tract of 25 acres, the allegation being that this was intended to represent his one-fourth interest in the one hundred acre tract; a tract of 117 acres, intended, as it is alleged, to represent his undivided interest in the 468 acre tract; and 34 acres, being the amount remaining to him of the 293 acre tract. From the years 1891 to 1898 inclusive these charges were combined and entered upon the land books in the name of said Atkinson's heirs as 176 acres. It will thus be seen that the undivided interest of

Atkinson in the 468 acre tract, and in the 100 acre tract, was charged on the land books as an aliquot part of the total acreage equal to his undivided interest in the respective tracts, his interest in the other tract being correctly charged.

The bill further shows that the land conveyed by him to his daughter Mary Jarrett, as aforesaid, from 1867 to 1873 inclusive, was charged on the land books as 25 acres, intended to be her one-fourth undivided interest in the 100 acre tract; and 117 acres, intended to be her one-fourth undivided interest in the 468 acre tract; and it does not appear from the bill that at first any charge was made on the land books against Mary Jarrett for the tract conveyed out of the 293 acres. Subsequently, however, the two charges aforesaid were combined, and to the same there was added 40 acres, representing the tract conveyed to her out of the 293 acre tract, and it was carried on the land books in this way in her name, and after her death in 1892 in the name of her heirs.

The interest of James Atkinson in the respective tracts of land under the assessments above indicated was returned delinquent for the non payment of the taxes assessed thereon for the year 1892, sold by the sheriff, and purchased at said sale by M. F. Osborne. No redemption of the same was made within the one year provided by law, and on the 10th day of April, 1895, a deed was made to the said Osborne conveying to him, not a tract of land containing 176 acres, as the same was entered upon the books, but an undivided one-fourth interest in the 468 acre tract; an undivided one fourth interest in the 100 acre tract, and the remainder of the 293 acre tract by metes and bounds. Plaintiffs allege that Osborne did not have this land entered on the land books under his tax deed, but it still remained charged thereon in the name of Atkinson's heirs. In 1898, however, Osborne conveyed whatever interest he acquired under his tax deed to the defendant Sarah C. Osborne. In 1899 the sheriff again sold the lands as delinquent in the name of Atkinson's heirs, and at this sale the same were purchased by the defendant Mariah F. Stone, and not being redeemed she, on the 25th day of January, 1901, procured a deed to be made to her, not for the tract of land as it was charged upon

the land books, but for an undivided one-fourth interest in the 468 acre tract, an undivided one-fourth interest in the 100 acre tract, and the residue remaining in Atkinson of the 293 acre tract by metes and bounds. Subsequently Mariah Stone conveyed whatever interest she derived under this tax deed to the defendant Sarah C. Osborne, reserving a one-half undivided interest in all mineral, oil and gas in the land, which interest so reserved has by sundry conveyances become vested in the defendant L. B. Koontz.

The interest conveyed to Mary Jarrett by her father James Atkinson, being charged upon the land books as above indicated, was by the sheriff of Kanawha county sold for deliquent taxes assessed against the same for the years 1897 and 1898, and at this sale the defendant S. S. Moore became the purchaser. Moore assigned and transferred his interest in the purchase to the defendant L. A. Beckwith, and the same not having been redeemed within the time required by law, Beckwith procured a deed to be made to him conveying this interest, not in the manner in which it was charged upon the land books, but as an undivided one-fourth interest in the 468 acres, a one-fourth undivided interest in the 100 acres, and a tract of 40 acres out of the 293 acres, Subsequently the defendant Beckwith conveyed the interest vested in him, if any, under this deed to the defendants J. A. Osborne and M. F. Osborne.

The bill alleges that these purchasers under the tax sales aforesaid have been in possession of the lands ever since, have extracted oil and gas therefrom, have cut the timber therefrom, and have sold and conveyed away a number of parts of said tracts of land, but the vendees of such tracts are not made parties to the bill, nor is it disclosed in the bill who are such vendees.

This suit was brought by a number of the heirs-at-law of James Atkinson, deceased, and of Mary Jarrett, deceased, claiming that the assessments of the lands as aforesaid were void, and that the sales made thereunder and the tax deeds above referred to are absolutely void and ineffective to pass the title of their respective ancestors; claiming further that even though said tax sales were valid, because of the relationship of the holders thereunder and the plaintiffs, the

said Sarah C. Osborne being one of the heirs of James
Atkinson, and the said J. A. Osborne being her husband,
and the defendant M. F. Osborne her brother-in-law, that
such purchases by them were nothing more than a redemp-
tion of the land, or at most the acquisition of an outstanding
adverse interest by a cotenant which inured to the benefit
of all of the owners.

The bill prayed that said tax deeds and the various deeds
made to the defendants, above referred to, be set aside
and cancelled as void. It further prayed that if such relief
could not be had, that the defendants be declared to be
trustees holding the said title for the benefit of all of the
heirs of James Atkinson and Mary Jarrett, and offered
to pay their part of the amount necessary to acquire this
outstanding title. It further prayed for partition of said
lands among the heirs of James Atkinson and Mary Jarrett,
and for an accounting of rents, issues and profits derived
from the land, as well as for the waste committed thereon.
The defendants demurred to the bill which demurrer was
sustained, with leave to the plaintiffs to amend, and the
case is certified to this Court to test the propriety of the rul-
ing of the lower court upon said demurrer.

It is insisted that the demurrer was properly sustained:
first, because the bill shows upon its face that there is a
want of proper parties to the suit; second, because it appears
from the bill that the plaintiffs have no interest in the
subject-matter of the litigation, the title to the said real
estate being forfeited and vested in the State of West
Virginia; third, because the plaintiffs are barred by their
laches; and fourth, because even though the deeds under
which the defendants claim were void originally, they are
good as color of title, and the defendants have been in
adverse possession of the land for more than the statutory
period, and have acquired good title thereto by reason of
such adverse possession.

As before stated, it is alleged in the bill that the defendants
have conveyed away numerous tracts or lots out of these
various parcels of land, and it is insisted that the vendees
under such conveyances must be made parties to the bill,
inasmuch as if the deeds under which defendants claim are

set aside and annulled, the title of their vendees will necessarily be adversely affected. It is not clear from the bill whether it is the intention of the plaintiffs to affirm these sales, and have partition only of the residue of the land, and have an accounting from the defendants for the money received for the parts sold, or whether it is their purpose to have partition of the whole tract, treating such sales as not passing title. The bill prays for partition of all of the land among the parties entitled thereto, and manifestly this cannot be had without prejudice to the claims of those holding under deeds from the defendants. It is familiar law that every person whose interest is to be affected by the result of an equity suit must be a party thereto, either plaintiff or defendant. *Maynard* v. *Shein*, 83 W. Va. 508, 98 S. E. 618, and cases there cited. It may be, however, that it is the intention of the plaintiffs to treat these sales made by the defendants as valid, and to have an accounting from them for the purchase money. If such is the case the interest of such purchasers would not be affected. The plaintiffs contend that the defendants were at the most but trustees for themselves and the plaintiffs, and if the trustees made an unauthorized disposition of the trust estate, or any part of it, of course those interested could, after knowledge, affirm the acts of the trustees and demand the benefit of the contract. *Barrett* v. *McAllister*, 33 W. Va. 738; *Sommers* v. *Bennett*, 68 W. Va. 157; *Williams* v. *McCarty*, 82 W. Va. 158, 95 S. E. 638. It does not, however, appear which of these theories the plaintiffs propose to adopt. If they choose to affirm the sales made by the defendants and demand an accounting for the purchase price, they should make an unequivocal allegation in their bill of such purpose, and ask only for partition of such of the land as has not been conveyed away. This would obviate the necessity of making these various vendees parties defendants. The bill not being clear in this regard, the circuit court upon this ground properly sustained the demurrer thereto, granting the plaintiffs leave to amend.

It is further insisted that the demurrer was properly sustained for the reason that the allegations of the bill show that any title the plaintiffs ever had in this land has been

forfeited, and is now vested in the State of West Virginia, and that under the decision of this Court in the case of *Morgan* v. *Pool,* 76 W. Va. 534, and authorities there cited, they cannot maintain this suit. The theory upon which this contention is based is that the entries of the land upon the assessor's books were void, such entries being for an aliquot part, when the real interest was an undivided one, and that in such case the whole tract must be assessed in the name of all of the owners, and not the interest of each owner assessed, either as an undivided interest or as an aliquot part of the whole. It is now well settled that the assessment of an undivided interest in real estate as such, or as an aliquot part of the whole, is a void assessment, and that a tax deed based upon a sale made under such an assessment is void and conveys no title to the purchaser. *Toothman* v. *Courtney,* 62 W. Va. 167; *Caretta Raliway Co.* v. *Fisher,* 74 W. Va. 115; *State* v. *Guffy,* 82 W. Va. 462, 95 S. E. 1048. While it is true that such an assessment cannot be the basis of a valid tax sale, and that a tax deed made thereunder is void, does it necessarily follow that the land itself is forefited, and the title thereto vested in the state, if in fact the state collects all of the taxes to which it is entitled? In *Caretta Railway Co.* v. *Fisher,* *supra,* it was held that such an assessment and payment of taxes thereunder prevented the forfeiture and the vesting of title in the state. The title of a tax purchaser depends upon a valid assessment of the land for taxes. If the land was entered upon the tax books and the taxes paid, the owner of the land and the state would be treated as waiving the character of the assessment, and the state would not be permitted to collect the taxes to which it was entitled, and also take from the owner his land. In order, however, for such invalid assessments to prevent a forfeiture of the title to the state, entries upon the land books of undivided interests or aliquot parts representing such undivided interests must in the aggregate equal the whole, and all of the taxes assessed against each of such parts on account of such entries must be paid. If any of the undivided interests are omitted from the land books for any successive five years, then the whole tract of land becomes forfeited. *Tooth-*

*man* v. *Courtney, supra; Caretta Railway Co.* v. *Fisher, supra.* In this bill it is alleged that after the said James Atkinson conveyed the interests above referred to to Caroline Samples and Mary Jarrett, respectively, each of them from the time of said conveyances had their respective interests in said land assessed to them in aliquot parts, that is to say, and then follows specific allegations of assessments in aliquot parts of James Atkinson's interests, and Mary Jarrett's intersts, but no such specification as to the interest of Caroline Samples. This allegation is hardly sufficient to show that all of the undivided interests were placed upon the land books and the taxes paid thereon. If this were not the case the whole tract of land would be forfeited, and the title thereto vested in the state. If it is a fact that the interest of Caroline Samples was assessed as were the other two interests, there should be an allegation to that effect.

But the defendants say that it appears from the bill that since these tax sales, all of which were made more than ten years ago, the lands were never assessed for taxes in the name of the plaintiffs and their associates, but that the same were assessed in the name of the defendants and the taxes paid thereon by them, and that the payment of taxes by the defendants would not protect the title of the plaintiffs from forfeiture, which being true, any title that the plaintiffs had in the lands at the time of the making of the tax deeds, if it did not pass by those deeds, became vested in the state for non entry upon the land books in the name of the plaintiffs since that time. It is true that the claimants under the tax deeds do not hold in privity with the former owners, as was held in *State* v. *Harman,* 57 W. Va. 447, and that the assessment of the lands for taxes in the name of the tax deed purchaser would not prevent forfeiture of the title of a former owner in a case where the tax deed is void, and did not pass the title, but that such title would become forfeited and vest in the state for non entry upon the land books after five years. That doctrine would apply here and would defeat plaintiffs were it not for their claim that because of their relationship to the defendants the purchases at the tax sales were simply re-

demptions. Whatever the facts may be in this regard, we must take the allegations of the bill as correct. If the defendants were cotenants with the plaintiffs their purchase of the common property at a tax sale, either directly or indirectly, would be but a redemption thereof, and their holding under the tax deeds would not be adverse to the rights of the plaintiffs in the lands. It is as much the duty of one cotenant as of another to pay the taxes, and where one, because of a common default in this regard, makes a purchase at a tax sale, he will be treated as having purchased for all, or as having redeemed the land for the common benefit. *Parker* v. *Brast,* 45 W. Va. 399; *Reed* v. *Bachman,* 61 W. Va. 452. We do not mean to say that as matter of fact the relationship of all of the parties interested here as defendants is as claimed by the plaintiffs in the bill, that is, that they all stood in such position as to make their purchases under the tax sales redemptions, but upon the demurrer the allegations of the bill in this regard must be taken as true. Should the proof develop a different state of facts, of course a different rule would apply.

The defendants further insist that the plaintiffs are barred by their laches, and by the adverse possession of the lands for more than 10 years. Of course it is settled that a tax deed, even though void, is good as color of title. *State* v. *Harman,* 57 W. Va. 447; *Yellow Poplar Lumber Co.* v *Thompson,* 108 Va. 612. This proposition is not disputed, but it is contended that the possession of the defendants was not adverse. It is claimed by the plaintiffs that before the possession of a cotenant is adverse, not only must such cotenant in possession claim the whole of the estate as his own, but the cotenant out of possession must have actual notice of this claim. Anyone of the joint owners of a tract of land is entitled to be in the possession of it, and it will not be presumed that a joint owner in possession is holding under any other than the true title, unless he shows that his cotenants have had actual notice of such other claim, and the Statute of Limitations will not begin to run against such cotenant out of possession until such actual notice is conveyed to him, or he has notice of a state of

facts inconsistent with any other conclusion than that he knew of such adverse claim. *Reed* v. *Bachman,* 61 W. Va. 452; *Sommers* v. *Bennett,* 68 W. Va. 157; *Hutchens* v. *Denton,* 83 W. Va. 580, 98 S. E. 808; *Guthrie* v. *Beury,* 82 W. Va. 443, 96 S. E. 514. If it appeared from the bill in this case that the plaintiffs had actual knowledge of the deeds under which the defendants now claim, or that they had knowledge of such a state of facts as was bound to disclose to them that the defendants were claiming the whole estate, then the demurrer should be sustained upon this ground, but this does not appear from the allegations of the bill. In fact the plaintiffs claim that they were ignorant that the defendants were making any claim adverse to their interests.

Were the plaintiffs guilty of laches in failing to assert their interest in the land under the circumstances shown by the bill? It is shown that for many years the defendants and those claiming under them have been exercising acts of ownership upon this land inconsistent with the interest of joint owners therein; they have been removing timber therefrom, extracting petroleum oil, and have been making sale of large parts of it, and defendants contend that the plaintiffs' acquiesence in their treatment of the land in this way bars them from now asserting a claim after the land has become largely increased in value by the discovery of minerals thereunder. On the other hand, the plaintiffs aver that they were entirely ignorant of their interest in the land; that they lived in distant parts of the country, and as soon as they became possessed of information that they had interests in the land they immediately began proceedings to recover the same. It is also a fair inference from the allegations of the bill that they knew nothing of the acts of absolute ownership committed by the defendants. The question of when one is barred from asserting an interest in real estate because of laches is one so dependent upon the exact relations of the parties that it will only be determined upon demurrer to a bill when the facts alleged make it clear that the plaintiff with full knowledge of the facts has slept thereon to the disadvantage of the defendant. Ordinarily a court of equity before reaching a conclusion upon a question so decisive of the rights of the parties will await the tak-

ing of the proof in order that it may be exactly advised as to the existing facts. While the bill in this case by its direct allegations may not satisfactorily excuse the delay of the plaintiffs in acting, the fair inferences to be drawn from these allegations, if they are supported by competent proof, may be sufficient to excuse this delay. We do not think this ground of demurrer was sufficient.

It follows from what we have said that the demurrer to the bill was properly sustained, and we answer the question certified accordingly.                                    *Affirmed.*