# CHARLESTON

## CARETTA RAILWAY CO. *v.* FISHER *et al.*

Submitted March 17, 1914.   Decided April 14, 1914.

1. TAXATION—*Assessment—Land of Cotenants—Tax Sale.*

    A tract of land owned by cotenants can not lawfully be assessed to them separately by undivided interests, or separately by aliquot parts representing their undivided interests, and a tax sale depending on such assessment of any undivided interest is void.   (p. 118).

2. SAME—*Invalid Assessment—Forfeiture for Non-Entry.*

    Though such unlawful assessment is made, still if all of the land is actually entered in that manner and the owners waive the irregularity and pay all the taxes on the land by such assessment, forfeiture for non-entry does not follow.   (p. 118).

3. SAME—*Assessment of Undivided Interests—Forfeiture.*

    If it is undertaken to assess land separately by undivided interests therein, or separately by aliquot parts representing the undivided interests, and any undivided interest is omitted for a period of five successive years, the title of the entire tract will become forfeited and vest in the State, notwithstanding entry and payment may have been made as to other undivided interests.   (p. 118).

4. SAME—*Void Tax Deed—Estoppel.*

    A tax deed purporting on its face to convey an undivided interest in land other than a town lot, is unauthorized by law, inoperative, and not conclusive as to any one.   It does not estop the State under Code 1913, Ch. 31, Sec. 29.   (p. 119).

Error to Circuit Court, McDowell County.

Action by Caretta Railway Company against Thomas Fisher and others.   The claim of defendant W. F. Harman to a one-half interest in a fund arising from condemnation of land was sustained, and plaintiff brings error.

*Modified and Affirmed.*

*Wyndham Stokes, W. W. Hughes* and *W. B. Kegley,* for plaintiff in error.

*Chapman & Gillispie, R. R. Smith* and *S. M. B. Coulling,* for defendant in error.

ROBINSON, JUDGE:

To whom belongs a fund in the hands of the court arising

from condemnation of land for a railroad right of way? Caretta Railway Company, a corporation, plaintiff in the condemnation proceedings, claims the money by reason of having acquired a deed conveying the tract of land, pending its proceedings to condemn a right of way through the same. But defendant W. F. Harman claims a one-half interest in the fund on the ground that he is owner of an undivided one-half in the tract from which the right of way was condemned. He of course denies the validity of the title under which plaintiff claims, as far as the undivided one-half interest claimed by him is concerned. The court sustained Harman's claim and adjudged to him one-half of the money. Plaintiff thereupon prosecuted this writ of error.

The right of way was condemned through what was originally a tract of 100 acres. In 1880 the tract was conveyed by Preston Beavers to Mary and Sarah Jane Farley jointly. Each of the parties to this controversy claims title from this common source. By regular chain of conveyances defendant W. F. Harman has a deed for the undivided one-half interest of Sarah Jane Farley. If that interest is not affected by forfeiture or tax sale, his claim is good. But plaintiff claims that by certain conveyances of undivided interests reaching from Mary Farley to its immediate vendor, and tax deeds for undivided interests under which title came to its immediate vendor, it now has title to the whole of the land, and that the title of Sarah Jane Farley to an undivided one-half therein has been extinguished or passed over to it.

No assessment of the land ever mentioned Sarah Jane Farley, or the name of any vendee of her interest. For several years after the conveyance of the land to Mary and Sarah Jane Farley the tract appeared on the land books in the name of Mary Farley as 100 acres by proper local description, and the taxes presumably were paid. Later, however, after Mary Farley had by a deed, void because her husband did not join therein, attempted to convey to Gross an undivided one-third of her undivided one-half, the land was assessed as 16 acres to Gross and 66 acres to Mary Farley. Here was plainly a misstatement of the quantity as to the assessment in the name of Mary Farley. The 16 acres off to Gross, left 84 acres that should have continued in her name. Then, later, after Mary

Farley by a deed to Ellen Beavers had conveyed a two-thirds undivided interest in her undivided one-half, the land appeared on the assessment book as 16 acres to Gross, 33 acres to Ellen Beavers, and 33 acres to Mary Farley. The former misstatement of quantity was still carried into the assessment in the name of Mary Farley. For, if such an assessment of undivided interests in a tract as was here made could be made at all, the number of acres remaining in the name of Mary Farley was too small to account for the whole of the 100 acres. Thus the assessment was continued from year to year, except that the 16 acres to Gross was dropped for two years and then reappeared as 16-2/3 acres in the name of Johnson, who had obtained title by a good deed supplanting the attempted conveyance made to Gross, and except that the 33 acres to Ellen Beavers was carried into an assessment of 146 acres to Straley, who had acquired her interest. There was no return of delinquency as to the assessments in the name of Gross, Ellen Beavers, Johnson, or Straley; so presumably the taxes were paid thereunder. But under the assessment of 33 acres to Mary Farley there was a return of delinquency for the years 1895 and 1896, and a tax sale thereupon to D. H. Harman, Jr., who acquired a tax deed from the clerk of the county court, which specifically conveyed to him an undivided one-third interest in the original 100 acres of land. Then this interest was re-entered on the assessment book in the name of D. H. Harman, Jr., as 33 acres. Subsequently no assessment appeared in the name of Mary Farley.

The titles of Johnson, Straley, and D. H. Harman, Jr., passed by conveyances to the Virginia-Pocahontas Coal Company, and under a conveyance from that company plaintiff claims. Its claim of ownership of the undivided interests which came through Johnson and Straley is in no wise inconsistent with the claim of defendant W. F. Harman to an undivided one-half of the land; for, the Gross and Ellen Beavers interests which were set over to Johnson and Straley, respectively, make up just the other undivided one-half. But plaintiff's claim of ownership through the tax purchase and deed is wholly in conflict with defendant W. F. Harman's claim. If good, the tax deed affects title to the Sarah Jane Farley undivided interest, for the tax sale was made under

an assessment in the name of her cotenant. That assessment was the only one covering the interest of Sarah Jane Farley. If it was valid, she was charged with the duty of payment thereunder, though it appeared only in the name of her cotenant. Yet it is conceded she did not pay taxes on her interest under the assessment.

Is the tax sale valid? To sustain it we must find that it is based on a valid assessment. From the record it is clear that the assessment underlying the tax sale was an assessment of an undivided interest in land. We have shown herein how it was undertaken to assess the whole, by parts. The notations of transfer on the land books, the deeds for the undivided interests corresponding to the transfers made, the report of the surveyor relative to the tax purchase, and the tax deed itself, all unmistakably point to the fact that the officials making the assessment and those acting under it considered it an assessment of an undivided interest in the 100 acres. Indeed that is what it was, and what it in fact was intended to be. Such an assessment is invalid, and the tax sale is void. *Toothman* v. *Courtney,* 62 W. Va. 167.

We have observed that the land was assessed by parts, and that such assessment embraced every interest claimed therein. The shortage in the quantity must be considered as arising from a mere misstatement. No one claimed any other interest than those assessed. There was a separate entry plainly representing each interest outstanding. So by illegal method the whole of the land was entered for taxation. Such entry continued, with payments of taxes pursuant to the same, until the date of the tax deed. Though the assessment was an irregular one, yet the owners waived the irregularity and paid the taxes under the assessment. The State accepted the taxes. Up to the time of the tax deed no forfeiture occurred for non-entry. *Webb* v. *Ritter,* 60 W. Va. 193.

After the tax deed was recorded, the former assessment by parts to the respective claimants of the different interests, all in privity, was materially changed. Thereafter the interest which the tax purchaser was supposed to have taken was assessed in his name, and the assessment in the name of Mary Farley was dropped. No assessment in the name of any former owner of that interest ever again appeared. Entries

were made covering the two other outstanding interests and taxes were paid thereon, but the whole of the land was not represented on the land books by assessment to the former owners. True, the whole of the land continued to be represented by separate assessments of interests and payments thereunder, but one of those interests appeared in the name of the tax purchaser. He was not in privity with the former owners. Entry and payment in his name would not help to save from forfeiture. *Simpson* v. *Edmiston,* 23 W. Va. 675. After the recording of the tax deed, all of the interests of the former owners were not represented on the land books. One undivided interest of the former owners was omitted. This indeed was an omission of the whole. It was non-entry of the tract. The title to the tract became forfeited to the State. "If any undivided interest should be omitted for a period of five successive years, the title to the entire tract would become forfeited and vest in the state." *Toothman* v. *Courtney, supra.*

By the forfeiture the title was lost to the former owners except so far as right of redemption remained. But it is maintained that the void tax deed estops the State from bringing any suit for the sale of the forfeited land, in which the former owners could avail themselves of redemption, and that the void tax deed, when the title passed to the State by forfeiture, operated to transfer to the grantee therein the title to the one-third undivided interest which it purported to convey. We were of this opinion at first, deeming it consistent with *State* v. *Snyder,* 64 W. Va. 659, and *State* v. *West Branch Lumber Co.,* 64 W. Va. 673. But further consideration has brought us to a different conclusion. Those cases involved no such deed as the one now in question. Here we have a tax deed void not simply for defects in the proceedings underlying it, but a tax deed on its face wholly unwarranted by law. It purports to convey an undivided interest in a tract of land. It is therefore not within the description of the deed which the statute makes conclusive against the State. Code 1913, ch. 31, sec. 29. That statute plainly refers to "such deed" as the law authorizes. It plainly refers to the deed authorized by section 25 of the same chapter as being essential to create a tax title. In section 25 it is pro-

vided: ''When the purchaser of any real estate so sold, and not redeemed as aforesaid, his assignee, or heirs or devisees, shall have obtained a deed therefor according to the provisions of this chapter and caused the same to be admitted to record in the office of the clerk of the county court * * * * such right, title and interest in and to said real estate * * * * shall be transferred to and vested in the grantee in such deed.'' Here we are told what the deed must be on its face to transfer and vest title. We observe that the tax deed must be one *obtained according to the provisions of the chapter*. If it shows on its face that it is not so obtained, then it can not carry the tax title. In other words, it is no tax deed. Now, other provisions of the chapter show that when less than the whole of a tract of land is sold at a tax sale, the deed must be obtained by the purchaser first having a survey made and then taking his deed for the specific divided portion of the tract of land so surveyed and laid off. These other provisions show us that the law contemplates no tax deed for an undivided interest, except as to a city, town, or village lot. As to land not urban they provide only for the taking of a tax deed for the whole interest in a surveyed or laid off parcel or tract. Code 1913, ch. 31, secs. 17 and 18; *Building & Loan Association v. Sohn,* 54 W. Va. 101. As to land other than a town lot the law recognizes no tax deed for an undivided interest—gives no force to such a deed. Does it mean that a deed which it does not recognize and give force unto shall be conclusive against the State? Certainly not, for wherein it says the tax deed shall be conclusive against the State, it clearly, by the use of unmistakable relative terms, refers to no other deed than ''such deed'' as the chapter authorizes. It means a deed valid on its face, though, it may be, invalid by defects in the proceedings on which it was based. Tax deeds are creatures of the statute. They can operate only as the statute directs. An undivided interest in land other than a town lot is something a tax deed can not convey. Nowhere does the statute give authority. Therefore a tax deed for an undivided interest in land other than a town lot is on its face inoperative, and conclusive against no one. It is quite as inoperative as one that has not been acknowledged, or one that has been signed by some official not

authorized in that behalf by the statute.  *State* v. *Harman,* 57 W. Va. 447; *Baxter* v. *Wade,* 39 W. Va. 281.

These considerations bring us to the conclusion that the land is unaffected by the deed made to the purchaser at tax sale and remains forfeited to the State.  Another tax deed under which also plaintiff claims, for another one-third interest in the land, occupies a similar invalid status as the one we have discussed and need not be further noticed.  The argument of plaintiff in relation to an equity by which it is entitled to the whole of the fund is not tenable.

For determination of the particular proceedings under review, plaintiff and defendant W. F. Harman may be considered the owners of the land from which the right of way was taken since they will no doubt avail themselves of an opportunity to redeem, now that the forfeiture has been ascertained and adjudged.  Plaintiff has title to an undivided one-half of the land subject to redemption of the land from forfeiture, and defendant W. F. Harman has title to the other one-half subject to such redemption.  The decree is only erroneous wherein it awards the fund absolutely.  One-half should have been awarded plaintiff, to be paid whenever the land shall have been redeemed from forfeiture; and the other one-half should have been awarded defendant W. F. Harman, to be paid whenever the land shall have been redeemed from forfeiture.  And pending proceedings for redemption of the land, which presumably will be instituted by the commissioner of school lands so that the parties may avail themselves of the grace of redemption given by law, the fund should be left in the hands of the general receiver of the court, where it now is.  The judgment will be modified in the particulars mentioned, and as so modified it will be affirmed.

*Modified and Affirmed.*