# CHARLESTON.

HART *et als.* v. THE KANAWHA OIL COMPANY *et als.*

Submitted October 24, 1916.    Decided October 31, 1916.

1. LANDLORD AND TENANT—*Tender of Release—Proposal in Pleading.*
   The mere proposal of a defendant in his answer to release or surrender a part of the land held under a lease from plaintiffs, in a suit to cancel the entire lease, does not amount to a tender of such release, or a continuing offer, and unless seasonably accepted by plaintiffs, may, before such acceptance, because of new circumstances and conditions justifying it, be withdrawn, and it constitutes reversible error thereafter for the court, upon the mere motion of plaintiffs, without other pleadings or proof, to strike out such answer and decree specific performance of such proposition.   (p. 165).

2. EQUITY—*Pleading—Answer—Admissions.*
   Such a proposal contained in the answer of a defendant, which denies the material facts alleged in plaintiffs' bill does not amount to admission of the facts entitling plaintiffs to the relief decreed. (p. 167).

Appeal from Circuit Court, Wetzel County.

Suit by Alexander Hart and others against the Kanawha Oil Company and others. From a decree for plaintiff, defendants appeal.

*Reversed and remanded.*

*Hubbard & Hubbard* and *Robinson, Rose & Robinson,* for appellants.

*M. H. Willis* and *E. H. Yost,* for appellees.

MILLER, JUDGE:

The object of the original and amended bills was to obtain, upon the grounds alleged, cancellation of a certain lease for oil and gas, executed by the plaintiffs to The Kanawha Oil Company, dated August 1, 1901, or if not entitled to the entire cancellation thereof, then that the same might be cancelled as to all the land covered thereby, except a boundary sufficient to protect the production of the wells drilled by defendants thereon. And the further prayer of the bills was that the damages sustained by plaintiffs because of the alleged improper, wrongful and fraudulent drainage of the oil through wells upon other or adjoining tracts might be ascertained and decreed to them; also that an accounting for the one eighth royalty oil produced from said land and to which plaintiffs were entitled might be had and decreed to them, and there was a prayer also for an injunction and other relief.

The answers of the defendants to the original and amended bills deny all the material facts alleged, on which plaintiffs predicate their right to the relief prayed for, but in their answer to the original bill, repeated in their answer to the amended bill, defendants by the nineteenth paragraph of their answer to the original bill, proposed as follows: "XIX. This respondent, having dealt with the plaintiffs in all fairness with respect to its operations under said lease, and believing itself to be under no legal or moral obligation to surrender any portion of said lease, is nevertheless willing to surrender an equal one-half of said tract on the southeastern side thereof, which it avers to be substantially more than a reasonable part of the undeveloped portion of said land. Respondent has caused a line to be surveyed across the middle of said 444 acre tract, extending from a point in the southwestern line of said tract North 49° 13′ East to an intersection with the northeastern boundary line of said tract. Respondent is willing, and hereby offers to release and surrender all

of the rights to which it is entitled under said lease dated August 1, 1901, with respect to the portion of said 444 acre tract which lies on the southeastern side of the division line so surveyed, amounting to 222 acres, more or less, as shown on plat marked Exhibit H. M. S. filed as part hereof.'' And the prayer of the answer was that the relief prayed for by the bill might be denied ''except in so far as may be consistent with the offer of surrender made in Paragraph XIX of this answer.''

This proposition contained in the defendants' answer to the original bill, and which was repeated in their answer to the amended bill, filed October 2nd, 1915, was taken no note of in plaintiffs' amended bill, but the allegations of the original bill were repeated, and the prayer thereof renewed, but no proof was taken on the issues presented by these pleadings, nor further proceedings had in the cause until January 29, 1916, when plaintiffs entered in court a motion based on said paragraph XIX, of defendants' answer, that ''defendants do within 20 days from this date execute, acknowledge for recordation and deliver a release of all the rights to which they or any of them are entitled under the lease dated August 1, 1901, save and except the following boundary'', describing it. And that should the defendants or any of them fail to do so then that a commissioner named should be authorized to execute such release to plaintiffs for and on behalf of the said defendants, to have the same force and effect as if executed by the respective defendants themselves. The court took time to consider this motion until January 31, 1916, but before any action was taken thereon, on February 1, 1916, the day on which the decree complained of was entered, and as a part of that decree, the defendants were permitted to file their amended and supplemental answer to plaintiffs' amended bill, which, by the same decree, on motion of plaintiffs, was stricken out, ''so far as the said answer relates to the tract of land for which a release is sought by the motion of January 29, 1916.'' And plaintiffs, over defendants' objection, were given leave to file their special replication to said amended and supplemental answer, which, on defendants' motion was stricken out, so far as it relates

to the land for which such release is sought by said motion of January 29, 1916. And the court being of the opinion that plaintiffs were entitled to the relief asked for in said motion, adjudged, ordered and decreed accordingly.

In their amended and supplemental answer, so stricken out, and in which defendants withdrew or attempted to withdraw the proposition contained in paragraph XIX of their original answer, they assign as reasons therefor, that at the time of the institution of this suit, and especially at the time their answers to the original and amended bills were filed the market price of oil was about one dollar and forty cents per barrel, but that about August, 1915, the price of crude oil commenced to advance and continued to advance until at the time of filing their said amended and supplemental answer the price had reached two dollars and thirty five cents per barrel; that their original offer to release a portion of the leased land was nearly a year prior to plaintiffs' motion and was intended only as a proposition, made under protest, for settlement of the matters in controversy in said suit, and was not intended as the tender of a release or a continuing offer, nor an acknowledgment of any liability to surrender any part of said land; that after their said proposition, plaintiffs failed to notice it in their said amended bill, and refused to accept the same, but in their said amended bill persisted in their alleged rights to all the relief prayed for, and insisted on taking depositions and prosecuting said suit until January 28, 1916, or three days prior thereto, when they made their said motion; that on October 1, 1915, they located and started to drill well No. 11, about six hundred feet south west of well No. 1, and about three hundred feet east of the west line of said farm, completing said well to and through the Gordon sand, and to the depth of about thirty two hundred feet, about January 1, 1916, at a cost of about $6,000.00, and which respondents believe will make less than five barrels per day; that after the completion of said well John Hart, one of said plaintiffs, purporting to be acting for himself and his co-plaintiffs, about January 20, 1916, entered into negotiations with E. D. Jennings, acting for himself and on behalf of respondents, for the purpose of compromising and

settling all matters in controversy, and as a result thereof said Hart for himself and associates proposed and agreed to dismiss this suit and abandon all claims made and set up therein, provided respondents would immediately commence and drill one well on the southeast side of said 444 acre tract, being that part of said tract which they had proposed to surrender in their original answer, and that said Jennings proposed to report said proposition to the defendants, Kanawha Oil Company, and others, immediately, and to return and report in person their acceptance or refusal, the week following, January 20, 1916, and which proposition was so communicated to and accepted by respondents, and said Jennings attempted to report defendants' acceptance thereof to said Hart, on January 27, 1916, but on arriving at the residence of said Hart, found him absent, and he was, therefore, not able to advise him of said acceptance. Wherefore, the making and filing by respondent of the said amended and supplemental answer, and wherein it is alleged that because of the changed conditions in the price of oil since said proposition was made, and because defendants were led to believe that plaintiffs did not intend to accept said offer and dismiss their suit, and were thereafter induced to expend the large sum of $6,000.00, on the further development of said farm under said lease, they thereby withdrew their said offer and refused now to surrender any part or portion of said land held by them under the said lease.

So the question is now presented whether upon these facts and this state of the pleadings and without evidence to sustain them, the court on the mere motion of plaintiffs properly pronounced the decree complained of. Counsel for plaintiffs contend that appellants' proposition should be given the same effect as the tender of money into court, or the tender of ponderous goods not susceptible of actual delivery into court, as money, and putting it beyond the power of defendants to withdraw the money or property from the control and disposition thereof by the court.

The law makes a clear distinction between a tender, the actual proffer of money or other property into court, and a mere proposal, or proposition to do the thing. Hunt on Ten-

der, section 1.    Our interpretation of defendants' offer is that it was a mere proposal to release, not the tender thereof. The language of the proposition is, "Respondent is willing, and hereby offers to release and surrender", a mere proposal to do the thing, by way of a compromise of the matters in controversy.    Such a proposal would require acceptance by plaintiffs, for the court could not on bill, and answer denying all the grounds for relief, decree acceptance and specific performance of the proposition, not accepted.    To constitute tender, the tender, whether of money or goods, must, as a general rule, always be kept good, and when actually made into court, cannot be withdrawn.    Not so with respect to a mere proposal to do a certain thing.    To constitute a good tender of title to interest in land by deed or release the instruments necessary to convey or release it must usually be tendered into court, thereby putting the title thereto in the control of the court, and beyond the recall of the party making the tender.    *Armstrong* v. *Maryland Coal Co.*, 67 W. Va. 589, citing among other authorities *Howard* v. *Higgins*, 137 Cal. 227; 16 Cyc. 566; 11 Am. & Eng. Ency. Law, (2nd ed.) 346.    Plaintiffs were not bound to accept the proposal, and evinced no timely disposition to do so, and it may be doubted whether the decree entered would be binding so as to estop them from further relief, if they should elect to proceed upon their bill to obtain full relief, but we do not so decide.

Treating plaintiffs' motion as an acceptance of defendants' proposition, it was not, according to the facts now in the record, in time.    New and important changes, disclosed by the amended and supplemental answer, stricken out, had taken place, between the date of defendants' proposition, and the date of said motion, which if true we think justified defendants in withdrawing their proposition.    Under such circumstances we think it was error to deny defendants the right to file their supplemental answer.    This proposition we think is supported by the case of *Hall* v. *Home Building Co.*, 56 N. J. Eq. 304; *Georgia R. & Banking Co.* v. *Gardner*, (Ga.) 39 S. E. 299; 5 R. C. L. page 879, section 4; Hunt on Accord and Satisfaction, 169.

The proposition involved in the case at bar has little likeness to a money tender, or a tender of goods, and cases like *Newman* v. *Levi*, 74 W. Va. 223, much relied on by counsel for plaintiffs, and cases of that class, also cited, have little application. The proposition made by defendants in their answer was far from an admission that plaintiffs of right were entitled to such relief; they had previously denied every material allegation of the bill relied on as the basis of any relief. A tender of money into court is a confession that plaintiff is entitled to judgment for the sum tendered, and of all the facts to be proven to entitle him to judgment. Not so in a suit in equity in which all such facts are specifically denied, and there is a mere offer, regardless of the facts, to settle the controversy on a certain basis.

For the reasons aforesaid we are of opinion to reverse the decree and remand the cause for further proceedings to be had in accord with the principles herein enunciated and further according to the rules and principles governing courts of equity.

*Reversed and remanded.*