MARTHA FUNT CAPLAN *v.* VICTOR H. SHAW

(CC 678)

ISAAC FUNT *v.* VICTOR H. SHAW

(CC 676)

Submitted February 8, 1944.   Decided March 24, 1944.

*Morris S. Funt* and *Rummel, Blagg & Stone,* for plaintiffs.

*Harry Shaw* and *Ward Lanham,* for defendant.

RILEY, JUDGE:

In the two cases under consideration, which we shall refer to as the "Caplan case" and the "Funt case", docketed by this Court upon certificates of the Circuit Court of Marion County, after it had sustained demurrers challenging the sufficiency of the bills of complaint, the respective plaintiffs seek cancellation of two tax deeds of

conveyance of real estate situate in Fairmont, West Virginia, and an accounting for rents, issues and profits therefrom. The questions certified in the two cases are identical, with one exception, but the facts are dissimilar, and it is therefore necessary that we detail separately the allegations of each bill of complaint.

## Allegations in the Caplan Case

Martha Funt Caplan, Esther Funt Kaufman, Tillie Funt Alswanger, Fanny Funt Shein, and Morris S. Funt, all of the children of Ida Funt, deceased, and her husband, Isaac Funt, brought suit against Victor Shaw for cancellation of the tax deed of a tract of land situate on Morgantown Avenue, in the City of Fairmont.

Ida Funt had acquired this land by deed of conveyance from Cyrus F. Boyers, Jr. and wife on November 26, 1909. She died intestate, seised thereof, on June 20, 1924, leaving surviving her the children and husband named above. The land became delinquent for nonpayment of 1929 taxes, and was advertised and sold by the Sheriff of Marion County on December 14, 1931, because of such delinquency. At the sale defendant Shaw became the purchaser for the sum of $290.65. On July 14, 1933, defendant caused a notice to be issued by John F. Phillips, Clerk of the County Court of Marion County, which was directed to "Ida Funt's Heirs" and "Isaac Funt", stating that "a ·deed has been required as provided by law, which deed will be made to the said Victor Shaw on or after the 20th day of October, 1933, unless you against that day redeem the said real estate from the said sale". This notice was published in The Fairmont Times once a week for four successive weeks, commencing on July 18, 1933, and personal service thereof was had on Isaac Funt by delivering to him in person a copy thereof. No personal service of the notice was had upon any of the children of Ida Funt, although Martha Funt Caplan and Morris S. Funt were residents of Harrison County, West Virginia. The other children were nonresidents of this State. According to the allegations

of the bill, defendant "had full knowledge and life-long acquaintance of and with the plaintiffs and could have by reasonable diligence discovered their whereabouts", and there is the further allegation that both defendant Shaw and the county clerk by the exercise of due diligence could have ascertained the whereabouts and names of plaintiffs "for the reason that the said defendant had knowledge that Carl Springer, then operating the East Side Building and Loan Association, of Fairmont, West Virginia, was acting as agent for Isaac Funt, and knew of his whereabouts". The county clerk executed and delivered a deed, bearing date July 19, 1934, and recorded the same day, to Victor Shaw as grantee, conveying to him the property involved in the delinquency. It is alleged also that since the date of the deed defendant has received and collected a large amount of income and rents from the real estate, to which, as plaintiffs aver, they are entitled. Plaintiffs assert that the deed should be cancelled because: (1) The demand and request "for issuance of notice of demand for deed", were not made within the time required by Code, 11-10-16; (2) the notice was invalid by reason of its having been issued and published before report and survey were filed in the clerk's office, and was not directed to plaintiffs as heirs at law of Ida Funt, deceased; (3) defendant failed to cause notice to be served upon plaintiffs, Martha Funt Caplan and Morris S. Funt, then residents of West Virginia; and (4) the deed was not made and executed within the time permitted and required by statute.

### Allegations of the Funt Case

By deed dated August 8, 1916, Cyrus F. Boyer, Jr. and wife, conveyed to plaintiff, I. Funt, real estate situate near Morgantown Avenue in the City of Fairmont, bounded and described as follows:

> "Beginning at a post, corner to the Fairmont Investment Company's land, (originally the John A. Leonard land), and running thence S 63° 30'

W. 105 feet to an iron pin, corner to land formerly conveyed by the party of the first part to the party of the second part; thence S 24° E 93.5 feet to a stake in line of a street; thence with said street N. 64° 15′ E 104 feet to an iron pin, in line of the Investment Company, (formerly Leonard), thence N 24° 55′ W 95 feet to the place of beginning."

This property became delinquent for nonpayment of 1929 taxes and was duly advertised for sale by the Sheriff of Marion County and sold by him on December 14, 1931, whereat defendant Victor Shaw purported to become the purchaser thereof for $195.10. Defendant Shaw, as the bill alleges, caused James J. Ruddy, Surveyor of Marion County, to make a survey and report of the property, as required by law, which report, dated May 19, 1933, was not filed in the county clerk's office until December 4, 1933. The surveyor's report contains the statements that he has ascertained the description by metes and bounds "of that certain tract or parcel of land charged on the land books of Marion County, West Virginia, in Union Independent District thereof, in the name of Isaac Funt, as situate in East Park Addition to the City of Fairmont, for the year 1929, * * * and sold by the said Sheriff of Marion County on the 14th day of December, 1931, * * * and purchased at said sale by said Victor Shaw, in the name of Victor Shaw, for the sum of $195.10 * * *", and then describes the land as follows:

"Beginning at a stake on the south of Alta Vista Avenue and in line of Guy Carter and running thence by true meridan courses and horizontal distances along the south line of said Alta Vista Avenue, N. 85 degrees 8′ W. 203.59 feet to a stake; thence S. 56 degrees 51′ W. 42.23 feet to a stake on the east side of Morgantown Avenue; thence with the east line of said Morgantown Avenue S. 43 degrees 16′ E. 84.32 feet to a stake, corner to said Guy Carter; thence leaving said Morgantown Avenue N. 69 degrees 34′ E. 192.53 feet with line of said Guy Carter to the point of beginning, containing 0.23 acres, more or less, and being the same

tract or parcel of land conveyed to Isaac Funt by the Fairmont Building & Investment Company, by deed dated the _____ day of January, 1914, and of record in the Office of the Clerk of the County Court of Marion County, West Virginia, in Deed Book 194, at Page 75."

Under date of July 14, 1933, the county clerk directed a notice to Isaac Funt, that defendant, the purchaser of the following real estate "Parcel, Morgantown Ave., located in Union Ind. District, City, which was sold by the Sheriff of Marion County, at the sale for delinquent taxes made on the 14 day of December, 1931, and a deed has been required as provided by law, which deed will be made to the said Victor Shaw, on or after the 20 day of September, 1933, unless you against that day redeem the said real estate from the sale thereof." Personal service was had on Isaac Funt, by delivering to him in person a copy of said notice on July 24, 1933. John F. Phillips, as clerk of said Marion County Court, executed, acknowledged, and delivered to the defendant a deed dated December 4, 1933, which, in part, recites that the said Shaw became the purchaser of the real estate "hereinafter mentioned and described", and in the deed the description of the real estate conveyed is the same as that contained in the surveyor's report. Plaintiff seeks the cancellation of said deed because (1) demand and request for issuance of notice and demand for deed were not made within the time required by Code, 11-10-16; (2) notice, survey and report of survey described by metes and bounds property other than that owned by plaintiff on December 14, 1933, and returned delinquent and sold; (3) the deed does not describe property owned by plaintiff, but undertakes to convey "other lands not owned by the Plaintiff and which were not delinquent or subject to sale by the Sheriff as such"; and (4) "defendant's deed and unlawful possession constitute a cloud on Plaintiff's title to the real estate" conveyed to plaintiff by Cyrus F. Boyers, Jr., and wife, under date of August 8, 1916.

As indicated above, the sufficiency of the bills of complaint was challenged by demurrers filed by the defendant, and sustained by the trial court which, on its own motion, certified the following questions here, which relate to both the Caplan and the Funt cases:

(1) That plaintiffs' bill of complaint is demurrable because it fails to show that the plaintiffs have title; that, said bill shows on its face that plaintiffs' title has been forfeited for nonentry upon the land books for assessment of taxes and for the non-payment of taxes thereon;

(2) That plaintiffs' bill of complaint is demurrable because of the failure of the plaintiffs to pay, or tender, to the defendant, the purchase money and taxes paid by the defendant as provided in Section 22, Article 10, Chapter 11 of the Code of 1931;

(3) That plaintiffs' bill of complaint shows the plaintiffs are guilty of laches;

(4) That the plaintiffs are not entitled to an accounting from the defendant for rents, issues and profits.

In addition the following question certified relates solely to the Funt Case:

That the defective description contained in the surveyor's report and carried into defendant's deed is cured by statute.

At the outset it is pertinent to observe that, except for the proposition that the misdescription in the Funt case is cured by statute, the questions certified do not challenge plaintiffs' position that the deeds sought to be cancelled are violative of the statutory requirements of Code, 11-10, in force both at the time of sale of the delinquent land and when the deeds were executed. Rather, defendant seeks avoidance of the consequences of having procured a tax deed in violation of such requirement by pointing out the weakness of plaintiffs' claims.

## I

Our initial inquiry relates to defendant's assertion that plaintiffs do not have a litigable status because their respective titles have been forfeited for nonentry and nonpayment of taxes. While questioning whether the averments of the bills warrant any issue of law grounded on forfeiture of plaintiffs' failure for five years after the tax sale to have the parcels of realty entered on the land books for taxation purposes, counsel for plaintiffs accede to the trial court's certification of that issue. Under Code, 37-3-2, when for five successive years the owner of a lot or tract of land "shall not have been charged * * * with state tax on such land, then, by operation of law and without any proceedings therefor, the land shall be forfeited and the title thereto vested in the State." See *Wiant* v. *Hays,* 38 W. Va. 681, 18 S. E. 807. This statute follows the language of Article XIII, Section 6, Constitution of West Virginia, wherein there is no mention of redemption of a title forfeited for nonentry except where the owner of such forfeited land, at the time of forfeiture thereof, is an infant, married woman or insane person, in which event redemption may be had within three years from the removal of such disability, provided "such right to redeem shall in no case extend beyond twenty years from the time such land was forfeited." Upon forfeiture because of nonentry, then under Code, 37-3-29, the former owner, his heirs, devisees or assigns could redeem and acquire the title vested "in him immediately before the forfeiture, but such redemption shall in nowise affect or impair any right, title or interest any other person may have in such real estate or any part thereof, by purchase from the State, or under and by virtue of section three, article thirteen of the constitution of this State." This opportunity of redemption was accorded before the State undertook to sell the forfeited land in a suit for that purpose and "at any time during the pendency of the suit for sale thereof and before a decree for the confirmation thereof has been

made and entered by the court", if title still remained in the State. In 1941, by Chapter 117, Acts of the West Virginia Legislature, the law relating to redemption was reenacted so that presently under Section 8, Article 3, of said Chapter 117 (effective March 6, 1941,) "The former owner of any real estate * * * forfeited to the state for nonentry, or any other person who was entitled to pay the taxes thereon, may redeem at any time until such real estate has been sold as provided in article IV of this chapter, and the sale confirmed by the circuit court". It may thus be seen that from the time that defendant purchased the parcels of land involved in the two causes, there has been existent a statutory opportunity of redemption. Such opportunity, as counsel for plaintiffs point out in brief, has been variantly defined by this Court. In *State* v. *King*, 64 W. Va. 546, 575, 63 S. E. 468, 489, it was classed as a matter "of grace * * * to be extended where it shall injure no one else claiming under the state, and it is not a vested right in the former owner"; while in *Neal* v. *Wilson*, 79 W. Va. 482, 487, 92 S. E. 136, it was said to be "a substantial equity, a property right, and exists as long as the legal title remains in the State." In *Shipley* v. *Browning*, 114 W. Va. 409, 172 S. E. 149, this Court held that a judgment taken against a former owner of land, duly recorded subsequent to sale of the land to the State for taxes but prior to institution of a school land commissioner's suit, attached to the statutory "equity of redemption". The opinion reads, in part, thus:

> "Compliance with statutory requirements and receipt of a deed by an individual purchaser terminates the former owner's equity of redemption. However, the situation is different where the sale has been made to the state. The latter wants only her taxes, and the equity of redemption exists as to her until the circuit court in a school land proceeding has confirmed a sale made by a commissioner after having adjudicated the taxes and given the former owner a day to redeem. The very fact that section 33, chapter 31, Code 1923, gives any person having a right to charge such lands

for a debt the right to come in and redeem within the year (*Bumgarner* v. *Bank*, 70 W. Va. 787, 74 S. E. 996) adds support to the plaintiff's contention that the sale to the state did not strip the former owner of every vestige of interest in the property. The former owner, while divested of legal title by the sale, still owns the equity of redemption, and although after the expiration of one year, and before the bringing of the suit by the school land commissioner, there is a time in which he cannot redeem, his right of redemption is there."

See *Early* v. *Berry*, 115 W. Va. 105, 175 S. E. 331. Whatever it may be called, in practical result those who are, by the statute, accorded the opportunity of redemption may reclaim a lost title by complying with the statutory procedure relating thereto. But does this statutory permissive redemption give a right to maintain a suit in equity to set aside a tax deed?

As early as 1874 this Court dealt with the question of the validity of a tax deed in a chancery cause (*Forqueran* v. *Donnally*, 7 W. Va. 114), and the following year in *Wyatt* v. *Simpson*, 8 W. Va. 394, it recorded in its syllabus the rule that, "A court of equity has jurisdiction to set aside a deed made by a recorder to a purchaser of land when the owner redeemed the same within the time required by law", although the proposition is not discussed in the opinion. Since the *Wyatt* case, this Court has considered a number of cases which involved the setting aside of tax deeds in proceedings in equity other than school land commissioners' suits. See *Jones* v. *Dils*, 18 W. Va. 759; *Orr* v. *Wylie*, 19 W. Va. 150; *Simpson* v. *Edmiston*, 23 W. Va. 675, 678, wherein the Court stated, "This Court has repeatedly held * * * that a court of equity has jurisdiction to set aside an illegal tax deed"; *Boggess* v. *Scott*, 48 W. Va. 316, syl. pt. 1, 37 S. E. 661, reads as follows: "Chancery has jurisdiction of a suit to annul a tax sale before deed is made, or to annul sale and deed under it"; *Fuller* v. *Edens*, 70 W. Va. 248, 73 S. E. 821.

In the present litigation, plaintiffs are attempting to protect the right of redemption which the State has given them. While it is tenable to argue that plaintiffs could, by redemption from the State, vest themselves with the legal title, we do not think such action is a prerequisite to the maintenance of proceedings to set aside allegedly invalid tax deeds. The matter of redemption is one between plaintiffs and the State, and so long as the right to redeem is available, an attack on a tax deed should not be foreclosed solely because the legal title is vested in the State. In the Funt case, it is alleged that defendant "has also caused the property of the plaintiff to be placed on the land books * * * and assessed to him, but has paid no taxes thereon since the date of sale to him". Should a tax deed purchaser whose title apparently has become forfeited for nonpayment of taxes be heard to complain that another in similar situation as to title to the land does not have a litigable status? In *Cunningham* v. *Brown*, 39 W. Va. 588, 20 S. E. 614, it was held that a void tax deed constituted a cloud upon the owner's title which the latter has a right to have removed. Equally pertinent is the matter of keeping unencumbered a right of redemption.

Defendant, however, would have us deny plaintiffs this opportunity under the principle enunciated in *State* v. *West Branch Lumber Co.*, 64 W. Va. 673, 63 S. E. 372; *State* v. *Johnson*, 102 W. Va. 189, 134 S. E. 737; and *Smith* v. *Casto*, 107 W. Va. 1, 148 S. E. 566, wherein point 7 of the syllabus reads as follows:

> "When for five successive years land is not assessed for taxation, it becomes forfeited to the state, and if in the meantime the land has been sold at a delinquent tax sale for nonpayment of taxes assessed prior to the five year period aforesaid and a deed made therefor, the forfeited title passes to the tax deed grantee. The former owner may prevent the forfeiture by keeping the land assessed and the taxes paid, and so remain in position to assail and set aside the tax deed, if it be

void as to him, but, if he neglect this for five successive years, his title is irretrievably lost by the forfeiture and the grant thereof to the purchaser is affected by the statute. Code, Chapter 31, section 29."

Apparently it is defendant's position that the execution and delivery to him by the clerk of the two tax deeds, even though void, estop the former owner and his heirs, who have permitted a forfeiture based on nonentry, from attacking his deeds. The principle enunciated in *Smith* v. *Casto, supra,* was a construction and application of Chapter 31, Section 29, Code, 1923 (Code, 1931, 11-10-26), which provided in substance that a deed acquired by a purchaser of delinquent lands sold by a sheriff was *prima facie* evidence against the State, and the former owner and his heirs, that certain facts recited in the tax deeds were true. Counsel for plaintiff, however, argue that there can be no estoppel to deny the effect of a deed which, on its face, is void. In *Caretta Railway Co.* v. *Fisher,* 74 W. Va. 115, 81 S. E. 710, it was held that said Section 29 was inapplicable when the tax deed was one unauthorized by law. In so holding, the Court distinguished the facts in the *Caretta Railway Company* case from those upon which the rule of *State* v. *West Branch Lumber Co., supra,* was based, in language which reasoned that:

"Those cases involved no such deed as the one now in question. Here we have a tax deed void not simply for defects in the proceedings underlying it, but a tax deed on its face wholly unwarranted by law. It purports to convey an undivided interest in a tract of land. It is therefore not within the description of the deed which the statute makes conclusive against the State. Code 1931, ch. 31, sec. 29. That statute plainly refers to 'such deed' as the law authorizes. It plainly refers to the deed authorized by section 25 of the same chapter as being essential to create a tax title. * * * Here we are told what the deed must be on its face to transfer and vest title. We observe that the tax deed must be one *obtained*

> *according to the provisions of the chapter.* If it shows on its face that it is not so obtained, then it can not carry the tax title. In other words, it is no tax deed."

This brings us to a consideration of the validity of the deeds which Shaw procured. Under Code, 11-10-14, where a plat and description thereof are returned to the county clerk of the county in which sale was made, the clerk is required to record the same in a deed book "along with the deed to the purchaser". At the time of sales to Shaw, Code, 11-10-16, provided that:

> "Any purchaser, his heirs, devisee or assignee, of any land so sold for taxes and not redeemed, may procure a deed therefor upon complying with the following requirements:
>
> " (a)  After the expiration of one year from the date of sale and before the expiration of one year and six months from such date, such purchaser, heir, devisee or assignee shall file, or cause to be filed, in the office of the clerk of the county court of the county in which the real estate is located, the survey and report mentioned in sections fourteen and fifteen (§§ 812 and 813) of this article, and pay to such clerk a sum sufficient to cover the cost of giving and serving the notice hereinafter specified:  * * *
>
> " (c)  Upon compliance with the requirements of subdivisions (a) and (b) by the person requesting a deed, the clerk shall thereupon give notice to the person in whose name the real estate was returned delinquent and sold, or, in case of his death, to his heir, devisee and personal representative, * * *."

In the Caplan case, according to the certificate of the county clerk, the survey and report were not filed until July 19, 1934, that date being also the date of the deed. The necessity for filing of the report before the expiration of the statutory period is recognized in *Woodyard* v. *Kuhn*, 89 W. Va. 670, 110 S. E. 187. Likewise, under Code,

11-10-21, it is provided that no tax deed shall be made or obtained after two years from the date of sale of the real estate. Since the tax deed issued to defendant Shaw in the Caplan case was made in violation of these two statutory provisions, it was made without authority of law, and therefore void. See *Mashuwas* v. *Bennett*, 90 W. Va. 338, 111 S. E. 303. The invalidity appearing upon the face of the deed, the principle announced in *Smith* v. *Casto*, *supra*, can have no application to the Caplan case. See also *Roe* v. *Geiger*, 91 W. Va. 203, 208, 112 S. E. 509, wherein it is stated that said section twenty-nine does not cure a tax deed void on its face.

Nor do we think the principle enunciated in *State* v. *West Branch Lumber Co.*, *Smith* v. *Casto* and kindred cases, all *supra*, applicable to the Funt case. In the *West Branch Lumber Co.* case, it is clear that the primary factor which caused a majority of the Court to hold that the State was estopped was the fact that the tax purchaser obtaining the void tax deed had thereafter over a number of years paid to the State a large sum of money for taxes, and it was reasoned that it was unconscionable and wrong for the State to assert a title adverse to one under which it had already collected a large sum as taxes. Judge Brannon's dissent is recorded in 66 W. Va. 1, 65 S. E. 1058. It closed with this pertinent *quaere*: "I am gratified, as relieving a hardship, that the majority see their way to the decision made; but how as to the law to sustain it?" There is much logic and law discussed in the dissent to recommend its conclusion; but analysis of the rationale of both the majority and dissenting opinions is obviated by the fact that the doctrine of the former, later applied in a title controversy between two citizens, finds no applicable situation where, as in the Funt case, the holder of the tax deed has paid to the State no taxes after obtaining his deed. Moreover, what significance can there be for Shaw in the fact that Funt's title has been forfeited to the State when the sole efficacy, if any, of the deed which he obtained, containing as

it did a description of property foreign to that in which Funt claims an interest, would be to give color of title to the property described in his deed? In other words, in the cases which follow the rule of the *West Branch Lumber Co.* case, there are adverse titles to one tract of land, while in the Funt case there are two titles to two different tracts of land. The Shaw deed did not in anywise relate to the Funt property, and therefore may not be said in anywise to be to his property. Further, we noted above that in *Caretta Railway Co.* v. *Fisher, supra*, wherein the deed was void on its face, the Court refused to apply the rule of the *West Branch Lumber Co.* case. The latter named opinion was written by Judge Poffenbarger, who records no dissent to the *Caretta Railway Co.* case, written when four of the Judges who participated in the earlier case were still on this Court. Judge Brannon alone was not then a member. Did the Judges who joined in the majority opinion in the *Caretta* case conceive error in the earlier conclusion reached? Did they determine that the doctrine of the *West Branch Lumber Co.* case should apply only to the state of facts presented in that case? Did they, by refusing to apply it where the deed was void on its face, begin a destruction of the rule itself through the medium of exceptions to it? While it is not pertinent here, why should the doctrine apply to a deed whose invalidity is not apparent upon its face, if not applicable where it does appear thereupon? It would seem that in either situation, the deed is not one authorized by law. In the Funt case, while the invalidity did not appear on the face of the deed itself, the report and survey, required by law to be recorded with the deed, disclosed that the procedural requirements of the statute had not been met. We think this legislative direction was intended to make the survey and report an integral part of the deed itself. Hence, the invalidity appearing from the papers so recorded further precluded application of the rule relied upon by defendant.

From the foregoing it is our conclusion that it was

error for the trial court to hold, in effect, that plaintiffs did not have a litigable interest.

## II

Code, 11-10-22, known as the "curative" statute provides, in part, that:

> "* * * And no irregularity, error or mistake in the delinquent list or the return thereof, or in the affidavit thereto, or in the list of sales filed with the clerk of the county court, or in the affidavit thereto, or in the recordation of such list or affidavit, or as to the manner of laying off any real estate so sold, or in the plat, description, or report thereof made by the surveyor or other person, shall, after the deed is made, invalidate or affect the sale or deed."

We are presently concerned with the question whether the erroneous description in the surveyor's report and tax deed is cured by the aforementioned statutory provisions. It is noted that in scrutinizing the deed of the county clerk to the defendant Shaw in the Funt case that it is not apparent from a reading of the deed in itself that there is any misdescription of the property which the sheriff sold at the delinquent sale. The deed, which is dated December 4, 1933, recites that at the sheriff's sale in December, 1931, Shaw became the purchaser of "Parcel, Morgantown Avenue, in Fairmont, Union Independent District, Marion County, West Virginia, charged with taxes in said county in the name of Isaac Funt"; that Shaw caused a report and description of the real estate purchased by him to be made and filed with the county clerk; and then follows a description of the real estate so purchased by metes and bounds. From a reading of the metes and bounds description, together with the other averments in the deed, we do not think it can be said that any misdescription appears, but plaintiff Funt avers in his bill of complaint that the property described in the deed is not the property which was sold for the delin-

quency, and this allegation is, upon demurrer, admitted. While it is true that a misdescription of a lot is cured by Section 22, in *Shrewsbury* v. *Horse Creek Coal Land Co.*, 78 W. Va. 182, 88 S. E. 1052, it was said that a tax deed must conform to the sale made by the sheriff. There the sale by the sheriff was of an undivided interest, while the deed made by the county clerk purported to convey a parcel of the whole by metes and bounds. The opinion (page 194) states that, "the sheriff had no right to do this and his act is void. It is the duty of the clerk of the county court to convey the lands sold by the sheriff * * *. Such deed made by the clerk of the county court is unauthorized and void." The result of inserting in the Funt deed a description of property wholly different than that which admittedly is different from that returned delinquent and sold, rather than a mere misdescription thereof, is to leave the deed without any description whatsoever so far as it relates to the land sold as delinquent. Hence, it is our conclusion that the error is not cured by Section 22, which provides that, "When the purchaser of any real estate *so sold* * * * shall have obtained a deed therefor, according to the provisions of this article, * * * such right, title and interest in and to such real estate, as was vested in the person or persons charged with the taxes thereon for which it was sold * * * shall be transferred to and vested in the grantee in such deed, notwithstanding any irregularity in the proceeding under which the same was sold, not herein provided for, unless such irregularity appear on the face of such proceedings of record in the office of the clerk of the county court, and be such as materially to prejudice and mislead the owner of the real estate so sold * * *." (Italics supplied). Shaw, though a purchaser of delinquent land, did not receive a deed for the real estate "so sold".

## III

Another ground upon which defendant relies to sustain his demurrer is that the bills are fatally defective

because they fail to allege that plaintiffs tendered to him payment of taxes and expenses paid by him. Code, 11-10-22, effective when sales of the delinquent lands were made, required payment or tender "to the purchaser or his heirs, devisees or assignee, or the person holding under him, or some one or more of them, the purchase money paid for such real estate at the time of the sale thereof, and all taxes * * * paid * * * and the costs of the survey or report made as hereinbefore required, with interest * * *." See also Article 8, Sec. 3, Chapter 117, Acts of West Virginia Legislature, 1941. The mandatory character of this statutory requirement was recognized and enforced in *Toothman* v. *Courtney,* 62 W. Va. 167, 58 S. E. 915, wherein this Court held:

> "A bill to set aside a tax-deed in such case must tender the purchase money and taxes subsequently paid, as a condition precedent to the setting aside of the deed, or aver the willingness and readiness of the plaintiff to pay the same. A decree which fails to secure the purchaser such reimbursement is erroneous."

See also note, 86 A. L. R. 1211, 1215, following *Warden, Admr.* v. *Warden,* 215 Cal. 215, 9 P. 2d 215.

In both the Caplan case and the Funt case, plaintiffs seek an accounting of the rents, issues and profits during the time defendant has been in possession of the two parcels of land, and in each of the bills of complaint there appears an averment that, "if after a proper accounting of the rents, issues and profits, there should be any sum due the defendant from the plaintiff, to reimburse him in any sum or amount for any reason, the plaintiffs stand ready and willing to pay such deficiency into the court and here offer to do so". Such offer, however, is negatived by a subsequent allegation which denies that defendant is entitled to any reimbursement because of the alleged invalidity of the deed. This latter position is, of course, at variance with the statute which makes payment or tender a prerequisite to setting aside a tax deed. We necessarily

conclude that plaintiff has not met the requirement of the statute. In the matter of tender we are concerned with a statutory requirement. If the former owner or one having the right to reclaim the title desires to set aside the deed which the purchaser has obtained, tender or payment is a prerequisite to such purpose. In *Hart* v. *Kanawha Oil Co.,* 79 W. Va. 161, 90 S. E. 604, tender was defined as "the actual proffer of money, as distinguished from a mere proposal or proposition to do so." Because the statute contemplates that a tax deed purchaser is to be reimbursed if the deed is set aside, tender, in the legal sense, by payment of the sums into court should be made by plaintiffs. These sums should not be disbursed by the court even upon cancellation of the deeds pending determination of the question of accounting sought by plaintiffs.

However, there is considerable authority in this jurisdiction that where a bill is insufficient because it lacks an averment of tender, the cause will be remanded to give plaintiffs an opportunity to make tender and to amend their bills in reference thereto. *Gates* v. *Morris,* 123 W. Va. 6, 13 S. E. 2d 473, and cases cited therein.

## IV

Defendant Shaw points out that the instant suits were not brought until 1942, while the deeds to him were obtained in 1933 and 1934, respectively, and argues that the lapse of time following the acquisition of the deeds and the lack of explanation thereof in plaintiff's bill require judicial approval of defendant's contention that plaintiffs are guilty of laches and acquiescence in defendant's ownership of the parcels of land. In *Bank of Marlinton* v. *McLaughlin,* 123 W. Va. 608, 17 S. E. 2d 213, it was held that "laches is a delay in the assertion of a known right which works to the disadvantage of another, or such delay as will warrant the presumption that the party has waived his right". We do not believe from the allegations of the bills of complaint that plaintiffs have been guilty of

laches. In this jurisdiction it is seldom that a court of equity will declare, upon pleadings, that plaintiffs are guilty of laches. See *Jarrett* v. *Osborne*, 84 W. Va. 559, 101 S. E. 162. Although we are appraising the allegations of the bills of complaint and do not know what may be contained in the answers which defendant may hereafter file, upon such allegations the complaint of defendant about plaintiffs' delay in attacking the tax deeds is not persuasive when it is considered that defendant himself had the opportunity to avoid the present controversy by timely and proper procedure in obtaining the deeds and by thereafter perfecting the titles by the payment of taxes.

## V

May plaintiffs in these proceedings have an accounting against the defendant for rents, issues and profits received by him during the time in which he has been in possession of the two properties? We have hereinbefore shown that plaintiffs in the two cases have, at the present time, a right of redemption, while the legal title, by reason of nonentry and nonpayment of taxes by plaintiffs, is vested in the State. In *Houck-Reidler Brothers Coal Mining Co.* v. *Coal Corporation*, 115 W. Va. 246, 174 S. E. 894, this Court denied to the former owner of land sold to the State for taxes the right to maintain an action under Code, 37-5-1, to recover the statutory penalty for removal of coal, while the title was in the State and be- fore redemption. We note, in the opinion, that "after redemption, such action may be maintained". Such language is consonant with the holding in *Elk Garden Big Vein Coal Mining Co.* v. *Gerstell*, 95 W. Va. 471, 121 S. E. 569, wherein point 1 of the syllabus reads as follows:

> "Where the title to a tract of coal owned by a corporation is forfeited to the State for failure of the owner to have the same charged on the land books of the county wherein the coal lies for five successive years, and the former owner redeems the same, as provided by the statute, it becomes

> reinvested with its former title; said title is retro-spective in character; and the corporation may maintain an action of trespass for the wrongful removal of said coal, though the trespass was committed while the title to said coal was vested in the State."

Since redemptions of plaintiffs' titles have not been made, plaintiffs are not at the present time entitled to such an accounting.

We do not think that plaintiffs should be required to effect redemptions of the parcels of land unless and until there has been a decree adjudicating cancellation of the tax deeds involved herein; but upon cancellation of the deeds and redemptions of the properties, the circuit court may, upon proper showing decree an accounting between the parties in each suit.

We therefore affirm the rulings of the circuit court in part and reverse them in part.

*Rulings affirmed in part; reversed in part.*